Shippjen, President,
 

 delivered the opinion of the court to the following effect.—
 

 This is a motion for a nonsuit, upon two grounds : first, that the plaintiff, by an acceptance of part of the money from the maker of the note in question, has discharged the indorser; and secondly, that he is also discharged, because due notice of the non-payment of the note was
 
 not
 
 given to him. It is to be observed, that with regard to discharging the parties to
 
 *266
 
 bills of exchange, the law makes a material difference ; for some of them can only be discharged by an express, but others may be discharged by an implied exoneration. Thus, the acceptor of the bill cannot be discharged by any construction in law; and though the holder proceeds against the indorser, and receives part of the money from him, this will not prevent his afterwards resorting to the acceptor for payment of the balance.
 
 Dingwall
 
 v.
 
 Dunster,
 
 Doug. 235. In the instance of a promissory note, the maker stands in the place of an acceptor.
 
 Johnson
 
 v.
 
 Kennion,
 
 2 Wils. 263.
 
 xqzki
 
 But an indorser is only a security that the ^acceptor of the bill, or *255] the maker of the note, shall pay the money ; and therefore, if the holder is guilty of any neglect in endeavoring to recover it, that will certainly bo an implied discharge of the indorser. If, for instance, the holder takes upon himself to give further time for payment, or receives a part of the money, and gives time for the rest, the nature of the transaction is essentially changed, and the indorser is no longer responsible,
 
 (a)
 
 The same principle applies to the second point; for, if the holder of a note, without giving notice to the indorser of its being dishonored, retains it so long in Ms hands, after the day of payment, as to create a presumption that he means to take upon himself to give a new credit to the maker, the want of notice in this case will likewise operate as a discharge.
 

 This, however, cannot be determined in the same manner here, that it is in England. In that country, regular posts are established, the correspondence between the great commercial towns punctually maintained ; and the communication, throughout the kingdom, is commodious, certain and uninterrupted. These circumstances, therefore, render it easy to make a general rule — of which the cases cited for the defendant from Term Reports, expressly speaks. But in Pennsylvania, there are some roads which the posts never travel, and some seasons in which the communication between the different parts of the state, is exceedingly difficult and precarious: How then can a general rule be made, so as to ascertain everywhere, and at all times, the reasonable time of the notice ? The attempt, if not totally impracticable, would, in its consequences, be dangerous and inconvenient.
 

 But, with regard to the particular case before us, there can be no doubt that the right of indorsees to call upon the indorsers, must be founded upon the custom of merchants : for, the indorsement, considered at common law, amounts only to an assignment of all the proj>erty in the bill or note, without making the assignor responsible, in the event of a non-payment. How far, however, promissory notes are, in this state, upon the same footing with bills of exchange, is a question
 
 sub judice
 
 in the supreme court ;
 
 (b)
 
 and therefore, it would be going out of our duty to give a decision upon it at this time. Yet, it must be observed, that the statute of
 
 Anne
 
 has, in some respects been extended to this country,
 
 (c)
 
 For the uniform practice has been, to bring actions upon promissory notes, as such ; and not actions
 
 *267
 
 of
 
 indebitatus assumpsit,
 
 which was the proper action, according to the opinion of Holt, Chief Justice, before the passing of that statute. The ■legislature, likewise, when regulating the assignment of bonds and notes, though they did not expressly put them on the same footing with bills of exchange, must, from the terms of the act, have taken it for granted, that an action might be brought upon a promissory note, considered as an instrument. Until, therefore, a contrary decision is pronounced, we must proceed as in the ease of a bill of exchange, under the statute of Anne ; and there it appears, that a very trifling negligence, on the part of the holder, @will rHJ operate as a discharge of the indorser. This rule we admit, is just [*256 and proper, when the course of trade is regular, and the communication by post is uniform and free. For, as it is usual among merchants, to lend their names to one another, all faith and credit would be at an end, if the holder of a note, instead of attempting to procure the payment from the person who ought really to pay it, might, tacitly, keep it in his possession, until the insolvency of the maker had deprived the indorser of his only remedy. If, therefore, he retains it two or three months, or any other unreasonable period, he ought certainly to bear the loss ; and accordingly, the law deems this the giving of a new credit to the maker, and discharges the indorser.
 

 Upon the whole, the facts in the present case are strong in favor of the
 
 defendant;
 
 but still we should be sorry to take it from the determination of the jury, upon a question respecting the reasonableness of the notice ; for, as it has been already said, it is impossible to establish a general rule, alike applicable to all the parts of the state ; and until such a rule can be established, every case, upon its own circumstances, must be left to the jury, as a question of fact, and not of law.
 
 (a)
 

 The jury afterwards gave a verdict for the defendant.
 

 (a)
 

 It has been held, that the indorser is not discharged, by the holder taking from the maker, a mortgage, of the same date with the note, as collateral security for payment of the note. Ligget
 
 v.
 
 Bank of Pennsylvania, 7 S.
 
 &
 
 R. 218.
 

 (b)
 

 In the case of McCullough v. Houston,
 
 post,
 
 p. 444.
 

 (c)
 

 Stat. 3 & 4
 
 Anne, c.
 
 9; “The 1st, 3d, 4th and 8th sections of this statuto are in force.” Report of the Judges of the Supreme Court.
 

 (a)
 

 See the note to Steinmetz
 
 v.
 
 Curry, note, p. 234. The determination of President Shippen, in this case, to leave the question of the reasonableness of the notice to the jury, as a question of fact, was adopted by the supreme court in several subsequent decisions. See Mallory
 
 v.
 
 Kirwan, 2 Dall. 192; Warder
 
 v.
 
 Carson’s Ex’rs, Id. 233; s. c. 1 Yeates, 531; Bank N. A.
 
 v.
 
 Pettit, 4 Dall. 129; Ball v. Dennison, Id. 165. In the-last reported case on this subject, however, Gurley
 
 v.
 
 Gettysburg Bank, 7 S. & R. 324; C. J. Tilghman, after quoting with approbation a remark of C. J. McKean, in Warder
 
 v.
 
 Carson, 1 Yeates 531; that a distinction exists between notes discounted by the banks in Philadelphia, and in the country, in this respect, observes of the former, that “there will be little difficulty, when a case occurs, in settling the law withregard to them.” “ But,” he adds, “ I am satisfied, that an attempt to lay down any general rule, at this time, applicable to all notes discounted in the country banks, would be unjust and dangerous. . . . And as to individuals in the country, who hold indorsed notes, never discounted by any bank, I am well assured, that there is no general understanding of any particular time of giving notice.”
 
 [1]
 

 [1]
 

 It is now well settled, that what is due notice of non-payment of a promissory note, so as to charge the indorser, when the facts are undisputed, is a question of law for the court, and not one of fact for the jury. Stockert
 
 v.
 
 Anderson, 3 Whart. 116; Jones
 
 v.
 
 Wardel, 6 W. & S. 399; Brenzer
 
 v.
 
 Wightman, 7 Id. 264; Holz
 
 v.
 
 Brown, 5 Penn. St. 178; Sherer
 
 v.
 
 Easton Bank, 33 Id. 134. So, as to what is due diligence in making a demand upon the maker. Bennett
 
 v.
 
 Young, 18 Id. 261; Smith
 
 v.
 
 Fisher, 24 Id. 222.