## McCreary *et al.* *versus* Commonwealth.

On a trial for burglary the jury may be discharged, if after consultation they cannot agree, and defendants held for another trial, and a plea of "once in jeopardy for the same offence" will not avail.

On a trial for burglary, the jury may be allowed to separate at the usual times of adjournment, after being cautioned by the court to avoid all conversation about the case.

ERROR to the Court of Oyer and Terminer of *Washington* county.

The defendants below were indicted for burglary, at May Term, 1857, committed in the dwelling-house of William Burton, and stealing therefrom property to the amount of $179. May 20, 1857, defendants were arraigned, and plead "not guilty." Issue was joined, a jury impannelled, who, after hearing the evidence and charge of the court, retired to deliberate upon their verdict. After considerable absence they came into court and said they were unable to agree, and were discharged by the court.

At August Term, 1857, the defendants were again called up for trial, when they filed the following special plea in bar :—

"And now, to wit, August 28, 1857, the defendants come and defend the wrong and injury, and for their plea say that they have been once in jeopardy for the same offence. That at May Term last past of this honourable court, they (the said defendants) were arraigned, and the testimony heard, and the case committed to the jury, and that the jury were dismissed, without the consent of the said defendants, because they could not agree; and the defendants, therefore, claim that they cannot again be put on their trial for the same offence. They therefore pray your honours that they may be discharged from all charges under said indictment."

To this plea the Commonwealth demurred. Defendants joined in demurrer, and the court overruled the plea on the ground that the jury, after deliberation, said they could not agree, and were dismissed by the court. The defendants were thereupon put on their trial a second time on the 28th day of August, 1857. The trial was not concluded on that day, and when the hour for adjournment came (the case being closed on both sides), the jury were cautioned by the court "to avoid all conversation about the case—to speak to no one about it, nor suffer any one to speak to them." They were then permitted to separate. On the following morning the case was argued, and the charge of the court delivered. The jury retired, and shortly afterward returned a verdict of "guilty." Same day defendants moved for a new trial. September 1, 1857, motion for new trial argued and overruled,

[McCreary *et al. v.* Commonwealth.]

and defendants each sentenced to four years' imprisonment in the Western Penitentiary.

The errors alleged were the sustaining of plaintiff's demurrer, and that the jury were permitted to separate after they had been impannelled, and heard the evidence.

*Montgomery* and *Gibson*, for plaintiffs in error.—The penalty for burglary, under the Act of 31st May, 1718, was death, and so continued until April 23, 1829, when the punishment was modified to imprisonment in the penitentiary : Jacobs *v.* The Commonwealth, 5 *S. & R.* 316 ; Commonwealth *v.* Cook, 6 *S. & R.* 577 ; Com. *v.* Clue, 3 *Rawle* 498 ; Peifer *v.* Com., 3 *Harris* 468. In some of the states it has been held that a prisoner was not in jeopardy until he was convicted : 3 *Story on Const.* 659 : Com. *v.* Olds, Supreme Court of Kentucky, 1822 ; People *v.* Godain, 18 *Johns.* 187 ; *Chitty on Crim. Law,* vol. 1, 628 ; Rex *v.* Wolf, 1 *Chitty's Rep.* 401. Under the Act of 31st May, 1718, the trial of a case for burglary is the trial of a capital crime. The authorities on the subject "*once in jeopardy*" will be found fully collated in *Wharton's Crim. Law* under that title : Williams *v.* Com., 3 *Grat.* 568 ; Com. *v.* Fells, 9 *Leigh* 613 ; State *v.* Garrigues, 1 *Hayward* 241 ; Speer's Case, 1 *Dev.* 49 ; State *v.* Ephraim, 2 *Dev. & Bat.* 162 ; State *v.* Waterhouse, *Yerg.* 278 ; Ned *v.* The State, 7 *Porter* 187 ; State *v.* Abram, 4 *Ala.* 272 ; Com. *v.* McCall, 1 *Virginia Cases ;* Weeber *v.* Com., 4 *Rob.* 756 ; McLane *v.* The State, 10 *Yerg.* 241 ; Monroe *v.* The State, 5 *Geo.* 75 ; Jarnagin *v.* The State, 10 *Yerg.* 529 ; McLane *v.* The State, 9 *S. & M.* 465.

*Wilson,* District Attorney, and *Hart,* for the Commonwealth.— McFadden *v.* Com., 11 *Harris* 16 ; *Story on the Const.* § 930 ; United States *v.* Haskell, 4 *Wash. C. C.* 409 ; United States *v.* Perez, 9 *Wheaton* 589 ; *Wharton's Am. Crim. Law,* §§ 581, 83, 84 ; Com. *v.* Bowden, 9 *Mass.* 194 ; People *v.* Godwin, 18 *Johns.* 187 ; Moore *v.* The State, 1 *Walker* 134 ; State *v.* Stone, 2 *Scan.* 326 ; Com. *v.* Olds, 5 *Little* 140 ; Com. *v.* Cook, 6 *S. & R.* 579 ; Com. *v.* Clue, 3 *R.* 498 ; Com. *v.* Peifer, 3 *Harris* 468 ; McFadden *v.* Com., 11 *Harris* 12 ; People *v.* Douglass, 4 *Cowen* 26 ; State *v.* Prescott, 7 *N. H.* 290 ; *Wh. Crim. Law,* § 3120 ; Franklin *v.* The State, *Sup. Ct. Ala.,* 15 *Am. Law Reg.*

The opinion of the court was delivered by

ARMSTRONG, J.—William McCreary and William Donnelly, *alias* Connelly, were indicted in the Court of Oyer and Terminer of Washington county, for burglary, committed in the dwelling-house of William Burton, and stealing therefrom his personal property, of considerable value.

On the 20th May, 1857, they were put on their trial, the evi-

[McCreary *et al. v.* Commonwealth.]

dence heard, the case argued by counsel, and the jury, after receiving the charge of the court, retired to deliberate on their verdict. After some time they came into court, and *said they were unable to agree,* and they were therefore discharged by the court.

At August Term of the same year, the defendants were again called up for trial, when they put in a special plea, stating the facts in a formal manner, alleging that they had " once been in jeopardy for the same offence," that the jury had been discharged without their consent, and claiming that they could not be again put on trial for the same cause. To this plea the Commonwealth's counsel demurred, and the court " overruled the plea of defendants on the ground that the jury on the former trial, after having retired, came into court, and declared their inability to agree, and were discharged by the court." The defendants were ordered to answer over, and a jury being called, the trial proceeded, and the defendants were convicted.

The special plea of defendants is based on the tenth section of the 9th article of the Constitution of Pennsylvania, which says, " No person shall, for the same offence, be twice put in jeopardy of life or limb." The counsel for the plaintiffs in error, in support of his argument for the application of this clause of the constitution to the case of burglary, invokes the aid of the decisions of the Supreme Court of our own state. But none of them afford a precedent for the point made here. It is not denied that the clause applies to cases of *felony* of *death ;* but no case has been cited showing its application to crime of an inferior grade. In The Commonwealth *v.* Cook and Others, 6 *S. & R.* 577, the defendants were indicted for murder—and so in The Commonwealth *v.* Clue, 3 *Rawle* 498, the language of the constitution is very imperative, " No person *shall,* for the same offence," &c. Yet it is not so inexorable as to shut out a practical construction demanded by necessity, and the safety of the community. Hence it is, that although now settled that the discharge of a jury in a *capital* case, against the consent of the prisoner, works his acquittal, yet the rule is subject to exceptions, " as where the prisoner has tampered with the jury, or has contrived to keep back the witnesses for the prosecution;" where the prisoner during the trial becomes insane; or where a juror dies. These are of a class of exceptions referred to in Cook's case, where the whole subject was most learnedly discussed by Chief Justice TILGHMAN and Justice DUNCAN, and the case is only referred to to show that it was once doubted whether the discharge of a jury, even in a capital case, was equivalent to the acquittal of the prisoner, and if doubted in such case, we may well hesitate before we allow to the guilty the use of such a shield to screen him from the punishment due to lesser offences.

But it is contended by counsel, that as by the Act of the 31st of May, 1718, burglary was punishable with death, and as the second section of that act provides that " the *inquiries* and *trials* of all petty treasons, misprision of treason, murder, manslaughter, and homicides, and all other crimes and misprisions, as by this act or any other Act of Assembly of this province are or shall be made capital, or felonies of death, which have been or shall be done, committed, perpetrated, or happen within this province, *shall be as by this act directed;*" and therefore if a jury could not be discharged in a *capital case*, they could not now in burglary, although that offence is no longer a felony of death. If it were, the argument would be conceded. The section provides that " the *inquiries* and *trials*" of offences which *are* or *shall be made* capital, *shall be as by this act directed.* This must be considered in reference not only to the crimes enumerated, .but to the punishment annexed to them. If, after the passage of this act, a crime not then punishable with death was subsequently made so, the party charged would be entitled to all the advantages which the rules of trial in a capital case would legally permit; and by the same rule, if offences made capital by the Act of 1718 ceased by law to be so, and were reduced to a lower grade, it affords no reason why a prisoner should demand as a privilege that which in mercy is extended to him as a right only when his life is in peril. But to what do the " *inquiries* and *trials,*" which are to "*be* as by this act directed" apply ? Most clearly to capital offences, and no other ; and when they are no longer so, the section has lost its force—there is nothing to which it can apply, and it fails to support the position which the counsel desire to maintain. The death punishment in burglary was first abolished by the Act of 5th April, 1790, when forfeiture of lands and goods, and imprisonment, were substituted, and afterwards by the Act of 23d April, 1829, punishment by imprisonment alone was inflicted. But when these humane laws were passed, it was not supposed or intended that any right should be yielded that was necessary to the protection and safety of the citizen, or that any argument would ever be drawn from the ameliorated code, to screen the culprit from deserved punishment; and I fear the hope derived from such a source will prove cruelly deceptive to those who entertain it. If the defendants have any ground to stand on, it is upon that clause in the constitution already referred to. That it applies to capital cases is on all hands conceded, for both "life and limb" are there in jeopardy. But this cannot be said when imprisonment alone is the punishment. There life is surely not jeopardized. But if the construction asked for be tolerated, that where imprisonment places "life or limb" in jeopardy, convictions for assault and battery might with equal propriety be embraced. Why the words "life and limb" were used originally in the same connexion

[McCreary *et al. v.* Commonwealth.]

would now, perhaps, be more curious than useful to inquire.  We find them coupled together in the constitution, and all we can do is to give them a rational and practical interpretation.   If, as observed by Justice BLACK, in McFadden *v.* The Commonwealth, 11 *Harris* 16, the phrase "jeopardy of life or limb," was used originally with reference to the mode of trial by battle, the danger to which the combatants were exposed pretty clearly interprets the use of the terms, for there the "limbs" as well as "life" were in danger.   But the barbarity of that age, in which human rights were determined by judicial combat and personal conflict, has passed away, and we are now governed by laws which, while they are intended by their just administration to protect and secure the peace and safety of the people, are mild and lenient to the offenders.   The practice of courts of justice, founded on long experience, with the continued acquiescence of the bar, is a pretty sure index of the sound construction of a law.   More than a century has passed, and not an instance in the judicial history of this Commonwealth has been shown or cited, where, in a case not capital, the discharge of a jury, because they could not agree, operated as discharge of the prisoner.   This is strong proof of the understanding of the courts, that this provision of the constitution is not to be applied except in cases where the *life* of the offender has once been placed in jeopardy.   This construction is highly necessary for the protection of the community.   The guilty have no right to complain, and it will not injure the innocent.   It is also assigned for error that the court permitted the jury to separate, after they had been impannelled and sworn, and heard a part of the evidence.   If this had been a case wherein capital punishment could have been inflicted, this assignment might possibly have met with some favour.

But, in cases of less magnitude, it has not been the practice of our courts to confine the jury during the hearing of the evidence, but to direct, as was done here, " to avoid all conversation with any person about the case."   It is the province of the court trying the cause to see that the rights of the parties are properly guarded, and this caution is considered a sufficient protection, unless something more is asked for.   Agreements drawn from the practice, in trials for capital felonies, have not the force that is asked for them when applied to offences of lesser degree.

There is nothing, therefore, to prevent the sentence pronounced by the Court of Oyer and Terminer from being carried into effect.

The judgment is affirmed.