## Commonwealth, Appellant, *v.* Baker.

Argued November 20, 1963. Before Bell, C. J., Mus-
manno, Jones, Cohen, O'Brien and Roberts, JJ.

*William H. Wolf, Jr.,* Assistant District Attorney,
with him *Arlen Specter,* Assistant District Attorney,
*F. Emmett Fitzpatrick, Jr.,* First Assistant District
Attorney, and *James C. Crumlish, Jr.,* District Attor-
ney, for Commonwealth, appellant.

*Donald J. Goldberg,* with him *Michael J. Rotko,*
for appellee.

Opinion by Mr. Chief Justice Bell, January 7,
1964:

This is an appeal by the Commonwealth of Penn-
sylvania from the Order of the Court of Oyer and Ter-
miner and General Jail Delivery of Philadelphia Coun-
ty, sustaining defendant's plea of double jeopardy to a
charge of murder in the first degree.

John Leroy Baker, the defendant, was charged in
Bill of Indictment No. 681 of April Sessions, 1961,
with the murder of his friend, Lulu Mayo. He was ac-
cused of killing her at her place of employment by fir-
ing five shots from a revolver into her body and caus-

ing her death. The case was called for trial on December 11, 1961. On December 13, 1961, a jury was impaneled and sworn and the case was tried by a jury and Judge. On December 19th, the trial Judge charged the jury; and at the conclusion of his charge, viz., at 4:34 p.m., the case was given to the jury for deliberation. The record is silent as to exactly what occurred thereafter,* but it was assumed by counsel for both appellant and appellee that the jury had its dinner and after some deliberation retired for the night. The following morning the jury resumed deliberation of the case. At 11:27 a.m. the jury returned to the Courtroom for further instructions and at 12:07 p.m. retired to resume its deliberations. Approximately forty-five minutes later, the jury returned to the Courtroom and informed the trial Judge that it was in disagreement. Thereupon, the following colloquy took place: "THE COURT: Ladies and gentlemen of the jury, you have had this case since yesterday afternoon. I know you have given it your very best consideration. The length of time we have taken to try this case ordinarily would have been two weeks and you have been here nine days now. May I ask you, Madam Forelady, it is now five minutes of one. If you went out and had lunch and tried again, because we are supposed to suggest to you that you must remain and deliberate as long as you can hope that you might arrive at agreement, do you think if you did that, that you could reach a verdict? Do you think that would be helpful? THE FORELADY: I don't think it would be helpful, Your Honor. THE

---

* Judge ALEXANDER, the trial Judge, wrote us a letter after oral argument in this Court, in which he stated that he clearly remembers that the Baker jury deliberated from 4:34 p.m. to 10:10 p.m. on December 19th, and from 9:00 a.m. to 12:53 p.m. on December 20th. Since this letter was not part of the record and its contents were not approved by counsel, it unfortunately cannot be considered by this Court.

COURT: Do you think you are hopelessly divided? THE FORELADY: Yes, Your Honor. THE COURT: Do you think it is physically and mentally impossible to come to an agreement? THE FORELADY: Yes, I do, Your Honor. THE COURT: Then I presume you want me as the judge to say this is a mistrial, that you just cannot come to an agreement. THE FORELADY: I am afraid so. (Side bar discussion with counsel.) THE COURT: Ladies and gentlemen of the jury, I must accede to your request and I will have to declare this to be a mistrial. Stand the defendant up. (Defendant at the bar of the Court.) THE COURT: Leroy Baker, you have heard the statement of the forelady. The Court declares this case against you to be a mistrial and you will stand trial at another time. Take the defendant out."

Thereupon the trial Judge, over the objection of the Commonwealth and without either the consent or the objection of the defendant, declared a mistrial and discharged the jury.

On June 3, 1963, defendant was again brought to trial on the same bill of indictment for murder. Defendant forthwith filed a plea of "double" jeopardy or, as it is sometimes called, "former" jeopardy.* The lower Court sustained this plea of double jeopardy as to the charge of murder in the *first degree only,* and continued the trial in order that the Commonwealth might take this appeal.

Although no question has been raised as to appealability, we have considered the question and hereby de-

---

* The expression "double jeopardy" was used in the following cases: *Commonwealth v. Melton,* 406 Pa. 343, 178 A. 2d 728; *Commonwealth ex rel. Patrick v. Banmiller,* 398 Pa. 163, 157 A. 2d 214; and *Commonwealth ex rel. Farrow v. Martin,* 387 Pa. 449, 127 A. 2d 660; whereas the words "former jeopardy" were used in: *Commonwealth v. Kent,* 355 Pa. 146, 49 A. 2d 388; *Commonwealth v. Simpson,* 310 Pa. 380, 165 A. 498; and *Commonwealth v. Davis,* 266 Pa. 245, 110 A. 85.

cide that an appeal by the Commonwealth will. lie.: *Commonwealth v. Simpson,* 310 Pa. 380, 165 A. 498; cf. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304.

Before discussing the various contentions which have been made by appellant and by appellee, we note that both agree (a) that defendant is not entitled to be forthwith discharged, and (b) he can be tried at least for murder in the second degree and for voluntary manslaughter. This was clearly and definitely and specifically decided in *Commonwealth v. Simpson,* 310 Pa., supra. Although the Commonwealth and the defendant agree that the defendant can be tried for second degree murder and voluntary manslaughter, they differ on the question of whether he can again be tried for murder in the first degree. We believe another related question is necessarily involved, viz., if Baker is tried and convicted of murder in the first degree, can he be sentenced to more than life imprisonment?

The Commonwealth contends (1) that the trial Judge properly exercised his discretion in discharging the jury and (2) that defendant tacitly consented to the discharge of the jury, and for each of these reasons defendant's plea of former jeopardy should have been denied.

Article I, §10, of the Constitution of Pennsylvania pertinently provides: ". . . No person shall, for the same offense, be twice put in jeopardy of life or limb . . . ." This Court, in *Commonwealth v. Simpson,* 310 Pa., supra, construed this Section of the Constitution as follows (pages 384, 385, 387): ". . . May a defendant be tried a second time on an indictment charging murder when the Commonwealth seeks conviction not for murder of the first degree but for murder of the second degree or manslaughter only? In Hilands v. Com., 111 Pa. 1, the jury in a murder case after being sworn was

discharged by the trial judge. The defendant was again arraigned and convicted of first degree murder. It was held that this was double jeopardy as he had twice been put in jeopardy of life. . . . In Com. v. Tenbroeck, 265 Pa. 251, the defendant was indicted and tried for murder, and convicted of and sentenced for murder of the second degree. Pending the trial, the jury was permitted to separate, which, it was urged, compelled a reversal. We said (page 256), 'As the conviction was of the second degree the case ceased to be a capital one and the temporary separation of the jury, of which complaint is made, becomes unimportant.'

". . . 'The first observation to be made concerning the clause in question is that *it applies only to capital cases.** This was not the fact anciently, when punishment might take the form of mutilation of one's members, or their endangerment, as in trials by battle, for, in such cases, when placed on trial he was in jeopardy of his limbs without also being in jeopardy of his life. The cases in which the protection of the clause may be invoked are those in which, at the time the crime was committed, *it was punishable by death.* Thus, crimes which at common law were capital, but which under our statutes are not so punished, are not within the meaning of the provision. If at some future time the punishment for murder should be made life imprisonment in all cases, the clause in question would be of no service, except because of the possibility of a return to capital punishment.' For these latter statements there is the express authority of McCreary v. Com., 29 Pa. 323, 326.

". . . But the fact—the reality of the matter—is that there is now no jeopardy of limb, as there was when the expression first came into the law, when most, if not all, of the major felonies were punishable with

---

* Italics throughout, ours.

death or mutilation. The words to-day, so far as punishment is concerned, are without application to anything which exists.

". . . in McCreary v. Com., supra, the defendants were being tried for burglary. When it appeared the jury was unable to agree on a verdict, it was discharged; subsequently the accused were again put on trial. Their defense was former jeopardy. The plea was overruled and they were convicted. We affirmed the sentence, in the opinion making it clear that the constitutional provision applied only to capital offenses, saying: 'It is not denied that the clause applies to cases of felony of death; but no case has been cited showing its application to crime of an inferior grade. . . . It [the constitutional provision] is not so inexorable as to shut out a practical construction demanded by necessity, and the safety of the community. . . . That it applies to capital cases is on all hands conceded, for both "life and limb" are there in jeopardy. But this cannot be said when imprisonment alone is the punishment. There life is surely not jeopardized. But if the construction asked for be tolerated, that where imprisonment places "life or limb" in jeopardy, convictions for assault and battery might with equal propriety be embraced. . . . We find them coupled together in the Constitution, and all we can do is to give them a rational and practical interpretation.' . . .

". . . We think, however, our present construction comports more with sound public policy and with the necessity, now existing in dealing with law-breakers, for a reasonable interpretation of the criminal law. Hilands v. Com., 111 Pa. 1, and Com. v. Fitzpatrick, 121 Pa. 109, are overruled, so far as they are in conflict with this opinion.

"The order of the court below is reversed, the demurrer of the Commonwealth is sustained in part, the plea of defendant is sustained so far as first degree

murder is concerned, as to all other charges the plea is overruled and the indictment against him is reinstated, limited to a trial for offenses other than first degree murder."

In *Commonwealth v. Melton*, 406 Pa., supra, defendant was convicted at his first trial of murder in the first degree, with penalty of death. The Court en banc granted defendant a new trial, from which Order the Commonwealth appealed; this Court dismissed the Commonwealth's appeal. On the second trial defendant pleaded double jeopardy, but his contention of double jeopardy was rejected by this Court. We aptly said (pages 346, 347):

"The essential and basic requirements to sustain a plea of double jeopardy is that the defendant is being tried a second time for a criminal offense of which he had been previously acquitted: Commonwealth ex rel. Patrick v. Banmiller, 398 Pa. 163, 157 A. 2d 214; Commonwealth ex rel. Farrow v. Martin, 387 Pa. 449, 127 A. 2d 660, and cases cited therein.

. . .

"In Commonwealth ex rel. Farrow v. Martin, 387 Pa., supra, the Court said (pages 450-451): '. . . Our constitutional provision is that ". . . No person shall, for the same offense, be twice put in jeopardy of life or limb. . . ."' As has been pointed out in prior cases, it does not prohibit more than one trial for the same offense, but only that he shall not be twice in jeopardy. The right of an accused to interpose such plea in proper cases has never been questioned. However, the mere fact that he has once been tried, in itself, is not sufficient to base a plea.

"'One is placed in double jeopardy if he has received an acquittal or its equivalent, or a sentence which is no longer subject to attack. Until such legal sentence is imposed, the jeopardy in which he was placed, when first tried, must be deemed to continue

until the time of imposition of legal sentence at the subsequent trial.' "

## Was the Discharge of the Jury Justifiable?

In *Commonwealth v. Simpson,* 310 Pa., supra, this Court categorized the problem in the following words (page 384) : "Where a defendant has been put upon trial on an indictment charging murder, the jury sworn, and before verdict, *without the defendant's acquies-cence, or any absolute necessity*\* so to do, the jury has been discharged, may the defendant, pleading former jeopardy, be tried again on the same indictment? That he may not be for first degree murder is conceded and beyond question, as he would then again be in jeopardy of life . . . ."

This Court has never delineated—and we believe it is a practical impossibility to delineate—*all* of the situations which give rise to a sufficient and valid reason for discharging a jury in a capital case. In *Commonwealth v. Davis,* 266 Pa. 245, 110 A. 85, the Court, quoting from *Commonwealth v. Cook,* 6 S. & R. 577, 579, said (page 248) : " 'There is, indeed, one principle which cannot be contradicted, and that is, that the jury may be discharged in cases of absolute necessity; but what constitutes that necessity has been ascertained only in particular cases that have arisen.' "

In *Commonwealth v. Kent,* 355 Pa. 146, 49 A. 2d 388, the defendant was convicted, at his second trial, of murder in the first degree. He had previously been tried on the same indictment, but in the first trial the jury was discharged without reaching a verdict. The defendant filed a plea of former jeopardy. The Commonwealth's demurrer to this plea was sustained. De-

---

\* For additional exceptions see: *McCreary v. Commonwealth,* 29 Pa. 323.

fendant thereafter appealed to this Court, contending that the Commonwealth's demurrer should not have been sustained. The Court said (page 147) : "The question in the case is, Was it absolutely necessary to discharge the jury before verdict, the defendant not having *expressly consented*?" In that case, because the jury was hopelessly deadlocked after deliberating several days (the actual deliberations consumed more than 40 hours) and because of their physical exhaustion and the fact that one or more of the jurors were ill, the discharge of the jury was upheld and defendant's plea of former jeopardy was dismissed. It is clear that a verdict in such a case would have been *coerced*. The Court further said (page 149), that "A verdict consented *to and rendered necessary because of a physical exhaustion is not a true, just and conscientious verdict; and affords ground for granting a new trial:* Com. v. Lutz, 200 Pa. 226 . . . ."

We recognize the extreme difficulty in this and similar situations. The Commonwealth will often be impaled upon the horns of a dilemma. This is not a figment of the imagination. If a Judge discharges a jury before it returns a verdict, the defendant will likely plead at the second trial "double jeopardy", unless he has expressly consented to its discharge. On the other hand, if a Judge urges a jury to resume deliberating, and it thereafter brings in a verdict of guilty—the defendant will frequently contend that the jury's verdict was coerced. See, for example, *Commonwealth v. Clark*, 404 Pa. 143, 170 A. 2d 847, where this Court (a) held that the trial Judge erred in ordering a confused and overworked jury to continue its deliberations, and (b) reversed the judgment of first degree murder because the verdict was coerced, and (c) remanded the case for a new trial. Cf. also: *Commonwealth v. Moore*, 398 Pa. 198, 157 A. 2d 65.

A Judge must tread cautiously in this highly controversial field, being extremely careful to protect society and at the same time not to impinge upon or deny a defendant's constitutional rights. The Judge dismissed the jury at the first sign of disagreement, after the jurors had been deliberating only a relatively short period of time. We believe that the trial Judge dismissed the jury (1) before there was any *absolute necessity or realistic justification* for the discharge, and (2) without the actual or express consent of the defendant.

In reaching our conclusion that defendant cannot be tried again for murder of the first degree even though the penalty be limited to life imprisonment, we are influenced by the fact and the law that in a trial for murder a jury can impose the penalty of death irrespective of the recommendations of a district attorney or of the Court itself: *Commonwealth ex rel. Johnson v. Rundle,* 411 Pa. 497, 192 A. 2d 381. It would be illogical and unreasonable to hold that on a second trial for murder in the first degree, the jury could find defendant guilty of murder in the first degree but the law would not permit it to impose the death penalty. For these reasons we hold that the maxim that silence gives consent should not be applied to a situation as grave and a constitutional right as important as this. In other words, mere silence by defendant or his counsel to the proposed discharge of the jury by the trial Judge will not amount to a waiver of this very important constitutional right of every person accused of a capital offense.

The Order of the lower Court sustaining defendant's plea of double jeopardy to murder in the first degree is affirmed. The trial of Baker on the present indictment shall be limited to offenses other than *first* degree murder.