Commonwealth, Appellant, *v.* Warfield.
Commonwealth *v.* Warfield, Appellant.

556

Argued October 4, 1966. Before BELL, C.J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edwin J. Martin*, Assistant District Attorney, with him *Robert W. Duggan*, District Attorney, for Commonwealth.

*H. David Rothman*, with him *Robert N. Peirce, Jr.*, for defendant.

OPINION BY MR. JUSTICE O'BRIEN, March 14, 1967:

Barbara Warfield was indicted in Allegheny County for murder and voluntary manslaughter. Defendant's counsel filed a pretrial motion to suppress her written statement given to police following her arrest, wherein she had admitted robbing and killing the victim. A hearing was held on September 11, 1964, before the Honorable RALPH H. SMITH, who denied defendant's motion to suppress her written confession.

Defendant was then arraigned, entered a plea of not guilty, and on November 16, 1964, came on for trial before the Honorable EDWIN M. CLARK, and a jury.

After the jury had been empaneled and sworn, the trial judge entertained a second application to suppress Barbara Warfield's confession. The jury was excused and a hearing held concerning the circumstances under which the confession had been obtained. Following this hearing, at which no objection to the procedure followed was voiced by either side, the trial court found that the written and oral statements made by Barbara Warfield for the police were secured in violation of her constitutional rights and entered an order that the evidence thus obtained would not be admitted as evidence in the case.

Following the ruling to suppress the confession by the trial judge, the trial began, and the district attorney, in his opening statement to the jury, stated that defendant had made a confession to the police, admitting her guilt. It is undisputed by all concerned that this statement by the district attorney was made for the specific purpose of causing a mistrial so that a ruling might be obtained from the Supreme Court of Pennsylvania upon the correctness of the trial judge's suppression of the confession. The defendant, immediately after the district attorney's remarks concerning the confession, moved for a mistrial which the court granted. The Commonwealth appealed to this Court at No. 77 March Term, 1965, and, on June 30, 1965, we, speaking through Mr. Justice EAGEN, quashed the appeal. *Com. v. Warfield,* 418 Pa. 301, 211 A. 2d 452 (1965).

The record was remanded for trial and the instant motion was then filed raising the questions of former jeopardy and estoppel. A hearing was held before a court en banc to determine what transpired among the trial court, counsel, and defendant, before the mistrial took place. The hearing consisted solely of the statements of counsel for both sides, with no material disputes as to what had previously transpired.

At the hearing below, the Commonwealth contended, as it does here, that Barbara Warfield should stand trial for murder, without limitation as to the degree of murder of which she might be convicted. Barbara Warfield, now represented by counsel other than represented her at the abortive trial, contended, and still contends, that she should not be required to stand trial for murder at all, on the theory that jeopardy had attached at the first trial. The court below quashed the indictment for murder in the first degree but refused to quash the indictment in so far as it charged murder in the second degree and voluntary manslaughter and directed the defendant to stand trial accordingly. Both the Commonwealth and the defendant have appealed, the Commonwealth from the order of the lower court sustaining defendant's plea of double jeopardy as to murder in the first degree, and the defendant from the failure to quash the indictment in toto.

Article I, §10, of the Pennsylvania Constitution, reads as follows: "No person shall, for the same offense, be twice put in jeopardy of life or limb." In *Com. v. Simpson,* 310 Pa. 380, 386, 87, 88, 165 A. 498 (1933), when faced with substantially the same question, we stated that: "Moreover, the language of the constitutional provision is clear and unambiguous. 'No person shall for the same offense be twice put in jeopardy of life or limb,' can only mean that no one shall be tried a second time for an offense the punishment of which may result in the taking of his life or injury to his limbs. Plainly, the language itself compels this conclusion; abnormality in its use is required before any other can be reached. . . .

"Some of our cases give color to the thought that the court, in much earlier decades, had reached the conclusion only that he could not again be tried for first degree murder, and that there was no reason for

the rule that the prisoner should be completely discharged when he had once been put upon trial under an indictment for murder and upon a second arraignment pleaded former jeopardy. Thus in McCreary v. Com., supra, the defendants were being tried for burglary. When it appeared the jury was unable to agree on a verdict, it was discharged; subsequently the accused were again put on trial. Their defense was former jeopardy. The plea was overruled and they were convicted. We affirmed the sentence, in the opinion making it clear that the constitutional provision applied only to capital offenses, saying: 'It is not denied that the clause applies to cases of felony of death; but no case has been cited showing its application to crime of an inferior grade. . . . It [the constitutional provision] is not so inexorable as to shut out a practical construction demanded by necessity, and the safety of the community. . . . That it applies to capital cases is on all hands conceded, for both "life and limb" are there in jeopardy. But this cannot be said when imprisonment alone is the punishment. There life is surely not jeopardized. . . .'

"It is true the Supreme Court of the United States has declared that by the use of the phrase 'life or limb' in the Constitution of the United States, protection against double jeopardy is extended to all criminal offenses. It was so held in Ex Parte Lange, 18 Wallace 163. We have not followed this extreme view, but have permitted the retrial of offenses after juries have been discharged, although such an outcome could not be brought about under the federal interpretation. This ruling is not binding upon us, because the provision in the United States Constitution is a limitation upon the powers of the federal government and is not a limitation upon the states: Brantley v. Georgia, 217 U.S. 284. The view which we are now taking, it may be admitted, was not that entertained by the court in Com. v. Fitz-

patrick which followed Hilands v. Com. We think, however, our present construction comports more with sound public policy and with the necessity, now existing in dealing with law-breakers, for a reasonable interpretation of the criminal law. Hilands v. Com., 111 Pa. 1, and Com. v. Fitzpatrick, 121 Pa. 109, are overruled, so far as they are in conflict with this opinion." See also *Com. ex rel. Papy v. Maroney,* 417 Pa. 368, 207 A. 2d 814 (1965) ; *Commonwealth v. Baker,* 413 Pa. 105, 196 A. 2d 295 (1964).

Further, in *Com. v. Simpson,* supra, at page 384, we stated : "Where a defendant has been put upon trial on an indictment charging murder, the jury sworn, and before verdict, without the defendant's acquiescence, or any absolute necessity so to do, the jury has been discharged, may the defendant, pleading former jeopardy, be tried again on the same indictment? That he may not be for first degree murder is conceded and beyond question, as he would then again be in jeopardy of life."

Accordingly, we must agree with the court en banc that Barbara Warfield, defendant, could not be tried for any crime higher than murder in the second degree and reject defendant's contention that she could not be tried for either murder in the second degree or voluntary manslaughter. A careful review of the record, the hearing before the court en banc and its opinion, leads us to conclude that jeopardy did attach because the mistrial was deliberately caused by the Commonwealth and was not (even though the idea might have been suggested by defendant's attorney) caused by the voluntary act of the defendant. As Mr. Justice EAGEN for this court stated, in *Com. v. Warfield,* supra: "Certainly, no one could reasonably assert that after an adverse ruling, (even if the Commonwealth is the affected party), that a mistrial could be deliberate-

ly caused, and an appeal properly filed from the order holding the evidence inadmissible."

Barbara Warfield's counsel also raised before the court en banc the contention that the Commonwealth is estopped from trying her for more than murder in the second degree, basing his contention on the theory that the reliance given to the opinion of the assistant district attorney, even if that opinion were erroneous, was in fact relied upon, and thus became the theory of the case. The court en banc said: "We can never know for certain whether defendant was prejudiced by her reliance upon the advice of counsel, in which the assistant district attorney tacitly joined. But the matter is too important to speculate upon, and it is enough to say that she may well have been acquitted or found guilty of a lesser offense had the case been tried to a verdict without her confession. . . . 'As a general rule, when a party takes a certain position in judicial proceedings and maintains that position, he is estopped subsequently to change his position, adopting a position contrary to the first or inconsistent therewith, providing that such party gained an advantage in adopting the first position, or that the change of position would work prejudice to the adverse party.' 14 P.L.E. Sec. 41, Estoppel."

Inasmuch as we have concluded that double jeopardy precludes a trial for murder in the first degree, we need not, nor do we, decide the estoppel question.

In this Commonwealth, from time immemorial, a capital case has meant only that case in which, as a result of a permissible verdict, the death penalty might be imposed, and it has been a rule, uniformly adhered to in this Commonwealth, that when a defendant has been called to answer an indictment in which his being found guilty of a crime punishable by death might result, the jury cannot and should not be discharged without consent of defendant, except by reason of over-

whelming necessity. See *Com. v. Baker,* supra, and cases cited therein. We find no reason to extend that guarantee given in our Constitution protecting a person from being put in jeopardy of life or limb more than once, to other than capital offenses for which it was obviously intended.

Finally, we note that the defendant's appeal is from an interlocutory order, which order is not appealable, unless expressly made so by statute. "It is likewise well established that as a general rule the defendant in a criminal case may appeal only from the judgment of sentence: . . ." *Com. v. Pollick,* 420 Pa. 61, 215 A. 2d 904 (1966); *Com. v. Wright,* 383 Pa. 532, 119 A. 2d 492 (1956). While, as we pointed out in *Com. v. Pollick,* supra, "This rule is not inflexible and will yield in exceptional cases of great public interest to safeguard basic human rights", we are here, as there, not concerned with such "exceptional" circumstances.

In the appeal of the Commonwealth at No. 133 March Term, 1966, the order of the court below is affirmed.

In the appeal of Barbara Warfield at No. 135, March Term, 1966, the appeal is quashed.

Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Implicit in the Court's approach to the problems presented by the instant case are the following conclusions: 1) the double jeopardy clause of the Fifth Amendment to the Constitution of the United States has not been "selectively incorporated"[1] into the due process clause of the Fourteenth Amendment and thus

---

[1] Selective incorporation is the name given to the practice of absorbing specified, but not necessarily all, provisions of the Bill of Rights into the due process clause of the Fourteenth Amend-

is not binding upon this Court;[2] 2) the due process clause of the Fourteenth Amendment standing alone does not prevent Pennsylvania from limiting the application of its double jeopardy provision, Art. I, §10 of the Pennsylvania Constitution, to capital cases;[3] 3)

ment. In recent years, when a provision has been so incorporated, federal precedents interpreting the constitutional provision have been held to be controlling in state cases. See, e.g., *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065 (1965) ; *Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489 (1964) ; *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623 (1963) ; see generally, Brennan, The Bill of Rights and the States, 36 N.Y.U. L. Rev. 761 (1961) ; Henkin, Selective Incorporation in the Fourteenth Amendment, 73 Yale L.J. 74 (1963).

[2] See *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 183 n.4, 220 A. 2d 859, 861 n.4 (1966) for a discussion of recent cases which have undermined the long standing assumption that the double jeopardy provision of the Fifth Amendment is not a restriction upon the states. See also, *United States ex rel. Hetenyi v. Wilkins*, 348 F. 2d 844 (2d Cir. 1965), cert. denied, 383 U.S. 913, 86 S. Ct. 896 (1966). In *Cichos v. Indiana*, 385 U.S. 76, 87 S. Ct. 271 (1966), four members of the Supreme Court of the United States (WARREN, C. J., BLACK, DOUGLAS, FORTAS, JJ.) expressed their view that the Fifth Amendment's double jeopardy clause is relevant to state criminal prosecutions and strongly implied that federal precedents were controlling. While Mr. Justice BRENNAN joined the majority opinion, which dismissed the writ of certiorari as improvidently granted, and did not express his views, he has been the Court's leading advocate of "selective incorporation." See, e.g., *Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489 (1964) ; Brennan, supra note 1; Henkin, supra note 1 at 77.

In the past year, the Fifth Amendment has been held to have been incorporated in *People v. Bower*, 3 Mich. App. 585, 143 N.W. 2d 142 (1966) ; *State v. Farmer*, 48 N.J. 145, 224 A. 2d 481, 493-94 (1966) ; *People v. Ressler*, 17 N.Y. 2d 174, 216 N.E. 2d 582, 269 N.Y.S. 2d 414 (1966) ; cf. *State v. Barger*, 242 Md. 616, 220 A. 2d 304 (1966). But see *Cox v. State*, 197 Kan. 395, 416 P. 2d 741 (1966). However, if possible, I would prefer not to anticipate the Supreme Court on this question. See *Commonwealth ex rel. Montgomery v. Myers*, supra at 184, 220 A. 2d at 862; *United States ex rel. Hetenyi v. Wilkins*, supra at 854.

[3] As former Judge MARSHALL, in an opinion written shortly before he became Solicitor-General, has made unequivocally clear,

the rule of *Commonwealth v. Simpson,* 310 Pa. 380, 165 Atl. 498 (1933) is consistent with the intent of the

the Supreme Court of the United States has *never* deviated from its assumption that the due process clause of the Fourteenth Amendment imposes some limitations on a state's power to reprosecute. *United States ex rel. Hetenyi v. Wilkins,* 348 F. 2d 844, 849-55 (2d Cir. 1965), cert. denied, 383 U.S. 913, 86 S. Ct. 896 (1966). Thus, while *Palko v. Connecticut,* 302 U.S. 319, 58 S. Ct. 149 (1937), held that a state statute which permitted the prosecution to appeal an adverse ruling during a criminal trial was not so violative of the concept of ordered liberty as to be a part of the Fourteenth Amendment's due process clause, Mr. Justice CARDOZO's carefully worded opinion cannot be interpreted as permitting the states unlimited maneuverability: "What the answer would have to be if the state were permitted after a trial free from error to try the accused over again or to bring another case against him, we have no occasion to consider. We deal with the statute before us and no other. The state is not attempting to wear the accused out by a multitude of cases with accumulated trials. It asks no more than this, that the case against him shall go on until there shall be a trial free from corrosion of substantial legal error." Id. at 328, 58 S. Ct. at 153.

And although the late Justice FRANKFURTER was in the forefront of those Justices who felt that the Supreme Court of the United States should exercise the utmost restraint in reviewing state criminal procedure, he was nonetheless of the view that: "A State falls short of its obligation when it callously subjects an individual to successive retrials on a charge on which he has been acquitted or prevents a trial from proceeding to a termination in favor of the accused merely in order to allow a prosecutor who has been incompetent or casual or even ineffective to see if he cannot do better a second time." *Brock v. North Carolina,* 344 U.S. 424, 429, 73 S. Ct. 349, 351 (1953) (concurring opinion) ; see also *Bartkus v. Illinois,* 359 U.S. 121, 79 S. Ct. 676 (1959) (FRANKFURTER, J.) (by implication) ; *Hoag v. New Jersey,* 356 U.S. 464, 78 S. Ct. 829 (1958) (HARLAN, J.) (same).

It would be fruitless for me to attempt to improve upon Judge MARSHALL's treatment of the "core concept of double jeopardy" embodied in the Fourteenth Amendment, *United States ex rel. Hetenyi v. Wilkins,* supra. However, even a casual reading of that opinion (to say nothing of the relevant Supreme Court cases he examines) compels the conclusion that the limitations placed upon state reprosecutions, however broad or narrow they may be, can-

Pennsylvania double jeopardy clause's original meaning and ought not to be disturbed.[4] As my footnotes to these propositions indicate, I am not so confident about the proper resolution of the first that I am willing to

---

not be restricted to capital cases as has been the practice in Pennsylvania. This is especially so since apparently only Pennsylvania makes this distinction, see 22 C.J.S. Criminal Law §240 at 626. See *Brock v. North Carolina*, supra at 432, 73 S. Ct. at 353 (VINSON, C. J., dissenting); cf. *Malloy v. Hogan*, 378 U.S. 1, 11, 84 S. Ct. 1489, 1495 (1964).

[4] To the extent that *Commonwealth v. Simpson*, 310 Pa. 380, 165 Atl. 498 (1933), and cases following it, have failed to take account of the constitutional developments discussed in note 3, supra, they must by reason of the Supremacy Clause, Art. VI, Constitution of the United States, be considered no longer controlling. Moreover, I think it worth noting that *Simpson*, itself a 4-3 decision, is at least in one sense not in accord with the colonial understanding of double jeopardy. See Sigler, A History of Double Jeopardy, 7 Am. J. Legal Hist. 283, 300 (1963); see generally id. at 294-309. But see *McCreary v. Commonwealth*, 29 Pa. 323 (1857). For example, consider the views of Chief Justice McKEAN in *Respublica v. Shaffer*, 1 Dallas 255, 256 (Pa. 1788), when he refused the grand jury permission to question the defendant's witnesses because, inter alia: "for, by the law it is declared that no man shall be twice put in jeopardy for the same offence: and, yet, it is certain that the inquiry, now proposed by the grand jury, would necessarily introduce the oppression of a double trial. Nor is it merely upon maxims of law, but, I think, likewise, upon principles of humanity, that this innovation should be opposed."

On the other hand, it is probable that at the time of its adoption, Pennsylvania's (as well as the Fifth Amendment's) double jeopardy provision was thought to be applicable only after a prior acquittal or conviction. Notes, Double Jeopardy: The Reprosecution Problem, 77 Harv. L. Rev. 1272, 1273 (1964). This restriction, however, was soon abandoned, see id. at 1273-74, and today it would undoubtedly be inconsistent with the Fourteenth Amendment. See *Brock v. North Carolina*, 344 U.S. 424, 73 S. Ct. 349 (1953) (by implication); cf. *Downum v. United States*, 372 U.S. 734, 83 S. Ct. 1033 (1963); *Green v. United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 224 (1957). Compare *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 220 A. 2d 859 (1966); *Commonwealth v. Warfield*, 418 Pa. 301, 303, 211 A. 2d 452, 453 (1965).

assume the answer sub silentio; and with respect to the latter two I believe that conclusions contrary to those reached by the majority are necessitated.

Accordingly, I am compelled to dissent from the majority's approach as well as its holding that the defendant can be retried for second degree murder because the Commonwealth's double jeopardy provision is not applicable unless life is literally at stake. However, for reasons stated hereinafter I am in accord with the actual result reached in this case.

An understanding of the circumstances surrounding the initial abortive trial is essential to the proper disposition of the issues presented by this appeal. Barbara Warfield was indicted in Allegheny County on charges of murder and voluntary manslaughter. Her counsel's motion to suppress her alleged confession was overruled by Judge SMITH after a pre-trial hearing. The case proceeded to trial where, after the jury had been empaneled, defense counsel renewed the objection to the confession's admissibility. Judge CLARK, who was presiding at trial, entertained this motion, the Commonwealth interposing no objection to the holding of a second hearing.[5] Following the hearing, held outside the presence of the jury, Judge CLARK concluded that the confession violated the principles of *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964) and ordered it suppressed.

Thereafter Mr. Fagan, the assistant district attorney in charge of the Commonwealth's case, as well

---

[5] These events occurred in November 1964, which was before the adoption of Pa. R. Crim. P. 324 which sets forth the procedure for determining the admissibility of a challenged confession. Apparently, the Commonwealth did not object to Judge CLARK's entertaining the motion to suppress because: (1) it was confident the confession would be ruled admissible, and (2) under the prevailing practice in Allegheny County the trial judge was required to rule on a confession's admissibility.

as other members of the district attorney's staff, the defendant's attorneys, and Judge CLARK retired to the judge's chambers to discuss the effect of his ruling. What transpired in chambers was related by the attorneys present to the court en banc at the hearing held below in the instant case and is not in dispute. Mr. Fagan stated for the record[6] that although he had other evidence with which to proceed, he felt it was essential that the Commonwealth be able to test the propriety of a trial judge suppressing a confession already held to have been admissible prior to trial by one of his colleagues.[7] Accordingly, Mr. Fagan informed Judge CLARK in the presence of the defense attorneys, that "You leave me no other recourse than to cause a mistrial." There then followed a discussion of the effect of a mistrial upon the Commonwealth's ability to reprosecute the defendant. Mr. Fagan agreed with the defense attorneys that a mistrial would bar a reprosecution for first degree murder, although other attorneys there present, and the trial judge, were not so certain. Eventually Mr. Savage, one of the defendant's attorneys, suggested that Mr. Fagan mention the confession in his opening remarks to the jury and he

---

[6] The hearing was conducted informally and none of the attorneys were actually sworn.

[7] The Commonwealth believed, and Judge CLARK was inclined to agree, that under *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304 (1963), they had a right to appeal the adverse confession ruling. In the prior appeal of the instant case, 418 Pa. 301, 303, 211 A. 2d 452, 453 (1965), we held *Bosurgi* inapplicable because that was an appeal from a pretrial ruling. It is not known why the Commonwealth sought to use a murder case to test this proposition, since they claimed to have a first degree case, even without the confession and there was a strong likelihood that they would not be able to reprosecute the defendant for first degree murder, even if on appeal it was concluded they were right about the confession.

would move for a mistrial.[8]  This course of action was agreed to by all present, including the court.

Following the mistrial, the Commonwealth appealed Judge CLARK's suppression ruling.  This Court quashed the appeal.  *Commonwealth v. Warfield*, 418 Pa. 301, 211 A. 2d 452 (1965).  When the Commonwealth sought to retry the defendant on the original indictments, she interposed pleas of former jeopardy.  A hearing was held before a court en banc where testimony surrounding the circumstances leading to the abortive trial was received.  The court sustained the defendant's plea with respect to the first degree indictment but held she could be tried for murder in the second degree and manslaughter.  Both sides appealed their respective adverse rulings.

Last year in *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 220 A. 2d 859 (1966), we considered at some length the effect of a mistrial upon the defendant's later plea of double jeopardy.  Although *Montgomery* did not, nor could any opinion reasonably attempt to, anticipate " 'hypothetical situations in which the discretion of the trial judge [in declaring a mistrial] may be abused and so call for the safeguard of the . . . [prohibition of double jeopardy]' "[9], in my view the principles enunciated therein are of considerable aid in resolving both questions presented by this appeal.  In particular, we observed at 189-90, 220 A. 2d at 864-65: "Of far greater difficulty is the problem presented, as in the instant case, where the mistrial results from misconduct on the part of the prosecutor.

---

[8] The district attorney's staff attempted to convince Judge CLARK that his view of *Escobedo* was incorrect.  Mr. Fagan even suggested that the court not suppress the confession and let the defendant, if she was convicted, appeal.  Defense counsel naturally objected to this procedure.

[9] *Commonwealth ex rel. Montgomery v. Myers*, 422 Pa. 180, 190, 220 A. 2d 859, 865 (1966), quoting *Gori v. United States*, 367 U.S. 364, 369, 81 S. Ct. 1523, 1526-27 (1961) (FRANKFURTER, J.).

Very little attention has been accorded the issue by courts which have considered the problem, double jeopardy most usually being held inapplicable by reason of the accused's consent, by moving for a mistrial, to the termination of the initial proceedings. (Citations omitted.) To the extent that such expressions are intended to embody notions of 'waiver', we are unable to view them with approval. To hold that an accused must barter away his constitutional protection against the oppression of multiple prosecution in order to avoid the hazards of continuing with a proceeding which by hypothesis has been tainted so as to prejudice his right to a fair trial would not be consistent with the administration of justice.

"Yet, at the same time, the fact that the defendant has moved for a mistrial or otherwise consented to the termination of the proceeding is a factor to be considered in determining whether the circumstances call for the application of double jeopardy. In such a case, the accused, by moving for the withdrawal of a juror, has made the decision to bypass the panel then constituted and to forego the possibility that the jury might acquit, notwithstanding the misconduct which has marred the trial. Cf. United States v. Tateo, 377 U.S. 463, 468, 473-74, 84 S. Ct. 1587, 1590, 1593 (1964) (GOLDBERG, J., dissenting). Certainly, we deal with a wholly different situation when the defendant desires to continue with the jury as originally impanelled and objects to the termination of the trial. A mistrial declared in the face of the accused's insistence on his 'valued right' to proceed with the panel as there and then constituted would interject considerations not here present."

## The Commonwealth's Appeal

In concluding that the Commonwealth may not subject the defendant to a first degree murder prosecu-

tion, the majority opinion purports to rely solely upon the principles surrounding the attachment of jeopardy detailed in *Commonwealth v. Simpson,* 310 Pa. 380, 165 Atl. 498 (1933).[10] On the other hand, the court below, in reaching the same result, relied upon both double jeopardy and estoppel as alternative theories. I differ slightly with both these approaches, for I am of the view that under the facts of this case, double jeopardy and estoppel are interrelated grounds, rather than alternative ones.

When the trial resumed after the conference in chambers, Mr. Fagan, in accordance with the plan agreed upon, mentioned the defendant's confession in his opening remarks. Defense counsel immediately requested the withdrawal of a juror; Judge CLARK acceded to the request. If this were the entire record before us, perhaps the Commonwealth would be able to retry the defendant for first degree murder. Cf. *Commonwealth ex rel. Montgomery v. Myers,* 422 Pa. 180, 220 A. 2d 859 (1966). However, because of what transpired in chambers, the Commonwealth is not only estopped from asserting that defense counsel's action was voluntary,[11] but it must also concede that we are "confronted with a case in which the prosecution has invited the mistrial in order to secure another, possibly more favorable opportunity to convict the accused." Id. at 191, 220 A. 2d at 865. In light of the Commonwealth's attitude in chambers the defense could logically assume

---

[10] "Where a defendant has been put upon trial on an indictment charging murder, the jury sworn, and before verdict, without the defendant's acquiescence, or any absolute necessity so to do, the jury has been discharged, may the defendant, pleading former jeopardy, be tried again on the same indictment? That he may not be for first degree murder is conceded and beyond question, as he would then again be in jeopardy of life." *Commonwealth v. Simpson,* 310 Pa. 380, 384, 165 Atl. 498, 499 (1933).

[11] See notes 7 and 8 supra.

that had it not requested a mistrial the Commonwealth would continue to infect the trial with prejudicial remarks. In my view this deprived the defendant of her "valued right" to have her "trial completed by the particular tribunal summoned to sit in judgment on [her]", *Downum v. United States*, 372 U.S. 734, 736, 83 S. Ct. 1033, 1034 (1963), thus violating our notions of fundamental fairness. See *Gori v. United States*, 367 U.S. 364, 369, 81 S. Ct. 1523, 1526-27 (1961); *Green v. United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 224 (1957); *Brock v. North Carolina*, 344 U.S. 424, 429, 73 S. Ct. 349, 351 (1953) (FRANKFURTER, J., concurring).

## The Defendant's Appeal

During the discussions in chambers defense counsel had to weigh, on the one hand, the defendant's valued right to have the impaneled jury determine her fate at a trial in which the confession would not be admitted, and on the other hand, the possibility of immunizing her from a possible first degree murder conviction. At the hearing held below defense counsel testified that as a result of a deliberate strategic decision, he chose the latter.[12] In my view this decision, even if counsel now feels it to have been erroneous, is binding upon his client. See *Commonwealth ex rel. Fox v. Maroney*, 417 Pa. 308, 207 A. 2d 810 (1965); cf. *Henry v. Mississippi*, 379 U.S. 443, 447-48, 85 S. Ct. 564, 567 (1965). See generally, Comment, Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest, 54 Calif. L. Rev. 1262-1276 (1966). Moreover, while the defendant was not explicitly informed of the various alternatives available to her, she was kept abreast of the general developments

---

[12] See Record, 31a.

which were taking place behind the scenes and told her counsel that she was relying upon them to make the proper decision.[13] I believe that under these circumstances she, too, is estopped from denying that she waived[14] whatever plea of double jeopardy she might have had if, despite her or her counsel's desire to proceed to a verdict with all its attendant risks, the Commonwealth had deliberately necessitated a mistrial. Compare *Commonwealth ex rel. McCray v. Rundle,* 415 Pa. 65, 69, 202 A. 2d 303, 305 (1964). Thus, as in *Montgomery*[15], we are not, insofar as the second degree murder and voluntary manslaughter charges are concerned, confronted with a "situation in which the accused's desire to risk the original jury has been disregarded, by the decision of the court to terminate the trial over his objection."

Because of the unique facts of this case, I concur in the Court's result.[16]

Mr. Justice MUSMANNO joins in this concurring and dissenting opinion.

---

[13] See Record, 33a, 44a. Mr. Fagan admitted to having overheard counsel inform the defendant that if a mistrial was called she could not be retried for first degree murder. While I have previously expressed my abhorrence for tacit admissions, see *Commonwealth ex rel. Shadd v. Myers,* 423 Pa. 82, 91, 223 A. 2d 296, 301 (1966) (dissenting opinion), one cannot help noting the irony involved in this situation.

[14] Compare our discussion of waiver in *Commonwealth ex rel. Montgomery v. Myers,* 422 Pa. 180, 189, 220 A. 2d 859, 864 (1966) (quoted supra). The instant case, however, is atypical for the accused actually sought a benefit from the mistrial.

[15] 422 Pa. at 190, 220 A. 2d at 865.

[16] While the Court purports to quash the defendant's appeal, on page 560 it categorically rejects her contentions on the merits. If the Court were to quash the appeal without reaching the merits, the defendant would be forced to stand trial, which is of course precisely what she is seeking to avoid. Moreover, her appeal raises a question of law about which the record is complete.