Commonwealth *v.* Bartolomucci, Appellant.

Argued November 15, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Herman M. Rodgers,* with him *Rodgers, Marks & Perfilio,* for appellant.

*Robert F. Banks,* First Assistant District Attorney, with him *Joseph J. Nelson,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., February 27, 1975:

The sole basis of this appeal is whether the appellant should have undergone a second trial, on a narcotics charge which resulted in his conviction,[1] after the jury

---

1. The conviction was based on a violation of The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-113(a) (30), 1972, April 14, P.L. 233, No. 64, § 13, imd. effective, as amended 1972, Oct. 26, P.L. 1048, No. 263, § 1, imd. effective.

in the first trial was dismissed before reaching a verdict. The first trial, which lasted only four hours, presented a simple issue of credibility, i.e., whether to believe the undercover agent who testified that a sale was made to him by the appellant or to believe the appellant and his alibi witnesses. There was only one count and one charge for the jury to consider. The jury commenced their deliberations at 11:35 a.m. and deliberated until 8:45 p.m. taking an hour for lunch and an hour and a half for dinner. At 8:45 p.m. the Foreman instructed the tipstaff that they were not able to reach a decision. At this time the trial judge was out to dinner. At 10:10 a conference was held in the judge's chambers which was attended by the judge, the tipstaff, and counsel for the appellant and the Commonwealth. In this conference the appellant's attorney asked the tipstaff what he had said to the jury when they told him they were deadlocked. The tipstaff responded:

"When they told me they were deadlocked, I told them Judge ACKER had instructed me that we would be keeping them out for a considerable amount of time, to have due consideration, and that unless they absolutely insisted, I wouldn't call him back just to have him consider that because they would be considering it anyway. In other words, they were to stay out."

At 10:46 a second conference was held in the judge's chambers. The Judge asked the tipstaff what was the latest message from the jury. The tipstaff responded:

"The buzzer rang. I went in, and the foreman said, we're hopelessly deadlocked. Please tell the Judge that we can't reach an agreement."

On this basis and over the objections of appellant's counsel, who requested further instructions to the jury as to their ability to return a verdict, the judge declared a mistrial and discharged the jury at 10:55 p.m. The appellant was tried again and found guilty. The appellant

now appeals claiming that the lower court improperly dismissed the jury in the first trial, before they had reached a verdict, and thereby forced the appellant to undergo a second trial which offended his constitutional protections against double jeopardy. We regrettably must agree with the appellant.

The dilemma which confronts a trial judge when he is faced with a deadlocked jury is articulated in *Commonwealth v. Baker*, 413 Pa. 105, 114-115 (1964):

> "If a Judge discharges a jury before it returns a verdict, the defendant will likely plead at the second trial 'double jeopardy', unless he has expressly consented to its discharge. On the other hand, if a Judge urges a jury to resume deliberating, and it thereafter brings in a verdict of guilty — the defendant will frequently contend that the jury's verdict was coerced. . . . A Judge must tread cautiously in this highly controversial field, being extremely careful to protect society and at the same time not to impinge upon or deny a defendant's constitutional rights."

A thorough analysis of this problem, in light of Federal and Pennsylvania law, is set forth in the recent case of *Commonwealth v. Monte*, 459 Pa. (1974), where the Pennsylvania Supreme Court held the dismissal of a jury after 6½ hours of deliberation was proper. That case is similar in many respects to the present case but different in one very important aspect. In the *Monte* case, supra, the trial judge personally gave the deadlocked jury further instructions on two separate occasions when the foreman reported that they were unable to agree on a verdict, and then prior to discharging the jury the trial judge again communicated with them a third and final time by the following colloquy:

> "*The Court*: Mr. Foreman, would you advise the Court as to the status of the deliberations of the jury?

What is your judgment as to whether it is possible to arrive at a unanimous verdict in this case?

*The Foreman*: It is impossible.

*The Court*: Are you morally certain that it is impossible?

*The Foreman*: Morally certain."

In the present case the trial judge denied the request of appellant's counsel to give further instructions and conducted no colloquy with the jury in an attempt to determine at the time of their discharge if there was a reasonable possibility of a verdict. Instead the trial judge relied solely on the messages he received through his tipstaff.

The *Monte* case, supra, states, "Where the court from its communications with the jury had every reason to believe that further deliberations would have been futile, it is left with no alternative but to dismiss them as was done." Implicit in this statement is the fact that before a jury can be properly dismissed the trial judge must ascertain the position of the jury from his or her *personal* communications with the jury. The judge must be satisfied that further deliberation to reach a verdict would be futile, especially where defendant objects to dismissal without further instructions being given.

This case is such that the jury could have been appropriately dismissed had the trial judge first determined through personal communication that a unanimous verdict could not be reached. Here, this was not done, nor were further instructions given, and therefore we hold that the jury at appellant's first trial was improperly dismissed, which resulted in appellant's second trial being violative of appellant's right against double jeopardy.

Judgment of sentence reversed.

DISSENTING OPINION BY VAN DER VOORT, J.:

In this case the appellant was tried by a jury and found guilty of selling drugs on November 15, 1973. This was a re-trial of the case. The first trial resulted in a hung jury. The appellant asks us to upset his conviction because the trial judge in the first trial declared a mistrial after the jury had deliberated over eleven hours, including time for meals, because they were, in his judgment, deadlocked. The appellant claims that he has been placed in double jeopardy and is entitled to discharge. I respectfully dissent from the ruling of the majority reversing the conviction and discharging the appellant.

This was indeed an uncomplex case. There was one indictment containing one count charging the appellant with one sale of methaqualone on April 6, 1973 in Sharpsville, Pennsylvania. Appellant defended by an alibi and there was one simple issue of credibility as between the under-cover agent who testified as to the sale to him by the appellant and the latter's alibi witnesses. The total trial time was approximately four hours. The jury retired at 11:35 A.M. At 8:45 P.M., the jury summoned the tipstaff and informed him that they were unable to reach a decision. The tipstaff responded to them as follows:

"When they told me they were deadlocked, I told them Judge ACKER had instructed me that we would be keeping them out for a considerable amount of time, to have due consideration, and that unless they absolutely insisted, I wouldn't call him back just to have him consider that because they would be considering it anyway. In other words, they were to stay out."[1]

At 10:46 P.M., the jury again summoned the tipstaff

---

1. The trial judge held a conference among himself and counsel for both parties and counsel for defendant announced he took no exception to what the tipstaff had said.

who reported back to the Judge who was holding a second conference in his chambers:

> "The buzzer rang. I went in, and the foreman said, we're hopelessly deadlocked. Please tell the Judge that we can't reach an agreement."

The trial judge felt that the jury was deadlocked and that out of manifest necessity he should and did declare a mistrial and discharged the jury at 10:55 P.M.

The majority of our Supreme Court in *Commonwealth v. Baker*, 413 Pa. 105, 196 A.2d 382 (1964) pointed out what the judge is faced with where a jury is unable to reach an agreement. If he discharges the jury the Court is faced with a double jeopardy challenge based on a claim that there was no manifest necessity to declare a mistrial. If on the other hand, he requires the jury to continue deliberating after it has announced its inability to reach an agreement the court is faced with a challenge in the event of a guilty verdict on the grounds that the verdict was coerced.

The majority of the Court refers to the case of *Commonwealth v. Monte*, 459 Pa.    , 329 A.2d 836 (1974) where our Supreme Court held that the dismissal of a jury after 6½ hours of deliberation was proper. The majority distinguishes the *Monte* case on the grounds that in it the Court inquired personally of the foreman of the jury whether or not the jury could reach a verdict, while in the instant case, the Judge acted upon what the jury foreman told him through his tipstaff.[2] While it may be preferable for the trial judge to personally interrogate the jury as to its ability or inability to reach a verdict, to hold that a trial judge has abused his discretion in following a valid but different procedure, i.e., by acting upon the information which the foreman of the

---

2. The tipstaff is an officer of the Court and is sworn to faithfully perform his duties; there is no claim here that the tipstaff did not accurately inform the Court of what the jury foreman said to him.

jury has sent to him through his tipstaff and upon other factors present in this case such as the brevity of the case, the single charge against the accused, the simplicity of the issue, the length of time of deliberation and the lateness of the hour thereby setting free a convicted drug peddler is to warp and torture the judicial system into an ineffective instrument for upholding the law.

I would affirm the judgment of sentence of the trial court.

WATKINS, P.J., joins in this dissenting opinion.