## Commonwealth *v.* Colding, Appellant.

Submitted March 24, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John W. Packel,* Assistant Defender, and *Benjamin Lerner,* Defender, for appellant.

*Hugh Colihan, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., December 22, 1975:

On December 12, 1972, appellant pled guilty to aggravated robbery on Bill No. 1938 of October Term, 1972. On the same date, he was sentenced to a term of confinement[1] for "time in to four years."[2] On December 15, 1972, a hearing was held to reconsider the sentence. The trial court vacated the sentence of December 12, 1972, and placed appellant on four years probation with the same condition as to restitution. On June 5, 1974, appellant was found to have violated the conditions of his probation. The trial court revoked appellant's probation, and sentenced him to a term of confinement of one and one-half to three years, sentence to be computed from January 8, 1974. This appeal followed.

The appellant contends that the sentence imposed after revocation of probation is violative of the double jeopardy proscription[3] in that the minimum sentence of

---

1. Appellant was also ordered to make restitution to the complainant.

2. Both appellant and appellee agree that the sentence of confinement imposed was two months seven days to four years.

3. It is now established that the Fifth Amendment prohibition against double jeopardy applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784 (1969). Moreover, "[i]t is clearly the law in Pennsylvania that a 'modification of a sentence imposed on a criminal defendant which in-

one and one-half years exceeds the minimum sentence originally imposed.

Initially, we must decide whether or not the appellant has properly invoked the proscription against double jeopardy; we must determine how many sentences have been imposed. *See Commonwealth v. Foster*, 229 Pa. Superior Ct. 269, 324 A.2d 538 (1974).

In the instant case, the original sentence was "vacated." In *Commonwealth v. Tomlin*, 232 Pa. Superior Ct. 147, 150, 336 A.2d 407, 409 (1975), we stated that the effect of vacating a sentence is indistinguishable from cases in which a definite sentence is suspended.[4] Vacating the original sentence does not render the sentence void for purposes of double jeopardy. Therefore, our attention is properly focused on two sentences, the original sen-

---

creases the punishment constitute[s] further or double jeopardy.' *Commonwealth v. Silverman*, 442 Pa. 211, 215, 275 A.2d 308 (1971); see also *Commonwealth v. Davy*, 218 Pa. Superior Ct. 355, 280 A.2d 407 (1971); *Commonwealth v. Jackson*, 218 Pa. Superior Ct. 357, 280 A.2d 422 (1971)." *Commonwealth v. Tomlin*, 232 Pa. Superior Ct. 147, 149, 336 A.2d 407, 408 (1975).

4. In *Commonwealth v. Cole*, 222 Pa. Superior Ct. 229, 294 A.2d 824 (1972) an important distinction was made in considering whether or not a modification of a sentence, after revocation of probation, was violative of the double jeopardy clause of the Fifth Amendment. We drew a distinction between the modification of a sentence which was "suspended pending a period of probation" (Act of May 7, 1925, P.L. 554, §1, 19 P.S. §1051) and the modification of an order of probation imposed in lieu of sentencing (Act of August 6, 1941, P.L. 861, §25, 61 P.S. §331.25). We held that when ". . . the judge chooses to suspend sentence pending a period of probation, the trial judge may re-sentence the defendant if he violates that probation. *The maximum period of the re-sentence is limited, however, to the maximum term under which the defendant was originally sentenced."* *Commonwealth v. Cole*, supra at 231, 294 A.2d at 825-26. (emphasis added.) However, when the trial judge exercises ". . . the statutory option of imposing a period of probation in *lieu* of sentencing, the court defers sentencing a defendant to a fixed term of imprisonment. . . . In other words,

tence of "time in to four years," and the subsequent sentence of one and one-half to three years.[5]

The seminal case involving this claim of double jeopardy is *North Carolina v. Pearce*, 395 U.S. 711 (1969), which dealt with the problem of reconviction and resentencing where on appeal by the defendant, the original sentence had been set aside. The Court in *North Carolina v. Pearce*, supra at 723 held ". . . that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction." However, the Court concluded that due process ". . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *North Carolina v. Pearce*, supra at 725 (footnote omitted). The Court then held that "[i]n

the setting of the term of probation is not a term of sentence, and may not act as a limitation on the court to impose a sentence for a term of years greater than the probationary period, not in excess of the maximum fixed by law for the particular offense." *Id.* at 232, 294 A.2d at 826.

In *Commonwealth v. Tomlin*, 232 Pa. Superior Ct. 147, 150 n. 2, 336 A.2d 407, 409 n. 2 (1975) we again articulated the distinction made in *Commonwealth v. Cole*, supra.

5. The holding in *Commonwealth v. Tomlin*, 232 Pa. Superior Ct. 147, 336 A.2d 407 (1975) is not controlling. The case is factually distinguishable. In *Commonwealth v. Tomlin*, supra, after the appellant's probation was revoked the trial court increased both the maximum and the minimum sentence. In the instant case, the *maximum* was *decreased*, and only the minimum was increased. *Commonwealth v. Scheetz*, 217 Pa. Superior Ct. 76, 268 A.2d 193, *allocatur refused*, 217 Pa. Superior Ct. *l* (1970) is distinguishable for the same reason.

order to assure the absence of such motivation, we have concluded that whenever a judge imposes a *more severe sentence upon a defendant after a new trial,* the reasons for his doing so must affirmatively appear." *North Carolina v. Pearce,* supra at 726 (emphasis added).

Considering *North Carolina v. Pearce,* supra in the context of the instant appeal, we reject the appellant's contention that the increase in his minimum sentence is constitutionally proscribed. The appellant's "legal" sentence is not "more severe," in fact, his "legal" sentence, the maximum sentence, was decreased.

In *Commonwealth v. Diamond,* 225 Pa. Superior Ct. 53, 308 A.2d 137 (1973) (per curiam), the appellant was originally sentenced to a term of not less than five months nor more than five years in the state penitentiary. Several hours after this sentence was imposed, the trial judge learned that the appellant had attempted to escape while being transported to the sheriff's van. The trial judge ordered the appellant returned to the courtroom for resentencing, and imposed a harsher minimum. The appellant contended that he was twice placed in jeopardy when the harsher minimum was imposed. We affirmed the judgment of sentence per curiam without opinion.

It is well settled that ". . . whether a sentence is stated in terms of minimum and maximum or is for a purely indeterminate term, the maximum sentence is the real sentence." *Commonwealth v. Daniel,* 430 Pa. 642, 647, 243 A.2d 400, 403 (1968). Further, our Supreme Court stated in *Commonwealth v. Kalck,* 239 Pa. 533, 541-42, 87 A. 61, 64 (1913) (construing the Act of June 19, 1911, P.L. 1055, §6, 19 P.S. §1057, requiring sentences for an indeterminate term): "Assuming, as we do, for the purpose of interpreting the statute, that it is constitutional, it necessarily follows that the maximum sentence is the only portion of the sentence which has *legal validity,* and that the minimum sentence is merely an *administrative notice by the court to the executive department,* calling

attention to the legislative policy that when a man's so-called minimum sentence is about to expire, the question of grace and mercy ought to be considered and the propriety of granting a qualified pardon be determined." (emphasis added.)

We cannot conclude that the imposition of a minimum sentence, a sentence that has no "legal validity," is ". . . unquestionably a restriction on the defendant's freedom and a deprivation of his *liberty within the meaning of the Fourteenth Amendment." Commonwealth v. Vivian,* 426 Pa. 192, 200, 231 A.2d 301, 305 (1967) (emphasis added).[6]

While the minimum sentence does have significance for a defendant, in that he is not eligible for parole until the expiration of the minimum term,[7] there is no restriction of a constitutionally protected freedom. A defendant does not have an absolute right to parole. *Commonwealth v. Brittingham,* 442 Pa. 241, 275 A.2d 83 (1971).[8]

---

6. In *Commonwealth v. Vivian,* 426 Pa. 192, 231 A.2d 301 (1967) it was held that placing a person on probation was placing him ". . . in jeopardy as that term is used in the Fourteenth Amendment." *Id.* at 201, 231 A.2d at 306.

7. Act of August 24, 1951, P.L. 1401, §4, 61 P.S. §331.21.

8. We are mindful of the language in *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972) that ". . . the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege'. By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. *Its termination calls for some orderly process, however informal."* (emphasis added.) However, this language is not applicable to issues involving a defendant's initial right to parole. The Court in *Morrissey v. Brewer,* supra, extended the requirement of procedural due process to the *termination* of a conditional liberty. *See also Bell v. Burson,* 402 U.S. 535 (1971) (*suspension* of a motorist's license) ; *Goldberg v. Kelly,* 397 U.S. 254 (1970) (*termination* of welfare benefits).

Further, unlike *North Carolina v. Pearce*, supra, this is not a situation where a defendant's exercise of his right to appeal or collaterally attack the first conviction might be deterred. *North Carolina v. Pearce*, supra at 725. Instantly, when the new minimum was imposed, the appellant was before the trial court as a probation violator. The appellant had not, prior thereto, appealed claiming that his probation was improperly revoked. We are confronted with neither a factual nor procedural pattern evidencing a potential "chilling" of a defendant's right of appeal, nor a consequent "vindictiveness" for having successfully pursued an appeal.

We find nothing constitutionally suspect in a trial court's decision to exercise its discretion, and, after revoking probation, increase the minimum term which a defendant must serve before the question of ". . . mercy or grace ought to be considered. . . ." *Commonwealth v. Kalck*, supra. The minimum sentence originally imposed was a function of the trial court's assessment of the appellant's prospect for rehabilitation. Violation of the conditions of probation casts ". . . new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities' *Williams v. New York*, 337 U.S. 241, 245, 93 L.Ed 1337, 1341, 69 S. Ct. 1079." *North Carolina*

---

In *Bell v. Burson*, supra, the Court considered the relevant constitutional restraints on ". . . state power to *terminate an entitlement* whether the entitlement is denominated a 'right' or a 'privilege'." *Id.* at 539. (emphasis added.) However, the Court specifically stated that "[i]f the statute [which directed that licenses be suspended for motorists involved in accidents, unless they post security] *barred* the issuance of licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment." *Id.* at 539. (citations omitted) (emphasis added).

There is no constitutional impediment in restricting a person's eligibility for parole, although, once paroled, the "conditional liberty" cannot be terminated without the protection of procedural due process, regardless of whether parole is considered a "right" or a "privilege."

*v. Pearce,* supra at 723. When a defendant violates the conditions of his probation, the trial court, in light of events subsequent to the imposition of the first sentence, may re-assess its initial determination of the defendant's prospect for rehabilitation. There is no constitutional impropriety in increasing the minimum sentence in order to effectuate this re-assessment.

The judgment of sentence is affirmed.

---

CONCURRING OPINION BY VAN DER VOORT, J.:

I fully concur in the result reached by my colleague Judge JACOBS. I disagree with the theory upon which the result is reached. As I see it, the issue involved in this appeal is whether or not the vacating of a sentence of imprisonment in order to impose a sentence of probation completely nullifies the original sentence (hereinafter referred to as the first sentence). The lead opinion states that where the first sentence is vacated and a term of probation is imposed upon violation of the probation the sentence which may be imposed for such violation is limited to the maximum specified in the first sentence.

As I wrote in *Commonwealth v. Tomlin,* 232 Pa. Superior Ct. 147, 152, 336 A.2d 407 (1975)., the vacating of a sentence of imprisonment in order to impose a period of probation should completely nullify the first sentence and the court should not be limited in any subsequent sentence in the event of a violation of the probation to what was stated in the first (now nullified) sentence. I believe that the vacating of the first sentence renders the sentence void for all purposes including that of a claim of double jeopardy.

The reason for this belief of mine is that sentencing is a delicate art requiring great depth of knowledge, profound understanding, the ability to be firm at one time, compassionate at another and the competency to know when to be the one and when to be the other. There

are many cases when the line between a sentence of confinement and one of probation to be imposed upon a person found guilty of a crime is extremely fine. Judges imposing sentences of confinement in such cases frequently make the sentence less severe. Then because of the subsequent pleas of counsel on behalf of the prisoner, or the family of the prisoner or pleas of the prisoner himself the judge is persuaded to change the sentence to probation. In many cases this works out all right. But where it does not work out all right and the judge is faced with imposing a sentence for violation of probation he now finds he is "booby trapped". He can no longer exercise his discretion; thus sentencing is no longer an art. As a consequence of this current rule of law I believe the first sentence to confinement will now tend to be unnecessarily severe because the judge will be afraid of unduly limiting himself in his sentencing should he change the sentence to one of probation. Furthermore, the judge will now hesitate to change sentences from confinement to probation in cases where such a change is much the better for society.

I am encouraged by the fact that the lead opinion regards the first sentence as ineffective insofar as the minimum sentence is concerned. I can hope that the law will one day be that the first sentence is ineffective insofar as any part of the sentence is concerned.

DISSENTING OPINION BY SPAETH, J.:

The majority holds that an increase in appellant's minimum sentence, following revocation of his parole, does not pose a problem of double jeopardy. Its rationale for that position is that only the maximum sentence has legal validity, and in the case before us, the maximum sentence was decreased. I disagree.

In my view, an increase in the minimum sentence is a significant deprivation of liberty, even if ". . . the mini-

mum sentence serves the sole purpose of administrative notice by the court to parole authorities." *Commonwealth v. Brown,* 455 Pa. 274, 279, 314 A.2d 506, 509 (1974) (ROBERTS, J., concurring). The effect of the change in appellant's minimum sentence is to increase substantially (from two months and seven days to one and one-half years) the period of time he must remain in prison before being considered for parole. In *Commonwealth v. Silverman,* 442 Pa. 211, 217, 275 A.2d 308, 311 (1971), the Supreme Court said that ". . . a modification of a sentence imposed on a criminal defendant which increases the punishment is double jeopardy. . . ." Delaying eligibility for parole "increases the punishment," and thereby violates the Fifth Amendment's bar against punishing a defendant twice for the same offense.[1]

The Supreme Court's discussion in *Commonwealth v. Butler,* 458 Pa. 289, 328 A.2d 851 (1974), of the minimum sentence as it relates to parole supports this analysis. There the Court said: "Few interests are more substantial than freedom from lawfully-imposed confinement [citations omitted]. Indeed, parole is a fundamental public policy of this Commonwealth. 61 P.S. §331.1 (1964). Parole may mean an opportunity to start anew in society, and may be a determinative step in a person's 'rehabilitation, adjustment, and restoration to social and economic life.'" 458 Pa. at 296-297, 328 A.2d at 856.

Although the constitutional holding of *Butler,* that predicating eligibility for parole on the basis of sex is unconstitutional, is not immediately relevant to the case before us, the Court's analysis of the significance of parole and the importance of the minimum sentence in establishing a defendant's eligibility for parole is relevant. Here, the majority has concluded that "[t]here is no

---

1. The prohibition against double jeopardy has been made applicable to the States through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784 (1969).

constitutional impediment in restricting a person's eligibility for parole. . . ." Majority opinion at 618-619, n. 8. However, *Butler,* read in the context of *Commonwealth v. Silverman, supra,* says that there may well be such an impediment.

The majority distinguishes both *Commonwealth v. Tomlin,* 232 Pa. Superior Ct. 147, 336 A.2d 407 (1975), and *Commonwealth v. Scheetz,* 217 Pa. Superior Ct. 76, 268 A.2d 193, *allocatur refused,* 217 Pa. Superior Ct. *l* (1970), because in those cases the trial judge had increased both the maximum and minimum sentences. I regard this distinction as factual only. Both cases established the principle that ". . . an increased sentence after a probation violation was improper and that the court was limited to a reinstatement of the originally imposed sentence." *Commonwealth v. Tomlin, supra,* 232 Pa. Superior Ct. at 150, 336 A.2d at 409. They did not require the trial judge to refrain from increasing only the maximum sentence. Rather, their theory seems to me identical to that of *Commonwealth v. Silverman, supra*: *any* new sentence that represents an increase in punishment violates the State and Federal prohibitions against double jeopardy.

This is not a case like *North Carolina v. Pearce,* 395 U.S. 711 (1969), in which the defendant had won reversal on appeal and was subsequently reconvicted and resentenced. There, as the majority states, the Court held ". . . that neither the double jeopardy provision nor the equal protection clause imposes an absolute bar to a more severe sentence upon reconviction." *North Carolina v. Pearce, supra* at 723. Here appellant is being punished more severely without having been reconvicted.

For these reasons, I would reverse the judgment of sentence and remand to the lower court for resentencing consistent with this opinion.

HOFFMAN, J., joins in this opinion.