393 A.2d 1146
**COMMONWEALTH of Pennsylvania**
v.
**Shirley HENDERSON, Appellant.**
Supreme Court of Pennsylvania.
Argued Jan. 17, 1978.
Decided Oct. 5, 1978.

Klovsky, Kuby & Harris, William D. Harris, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Jane C. Greenspan, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

Appellant, Shirley Henderson, was convicted of involuntary manslaughter after a non-jury trial in the Court of Common Pleas of Philadelphia County. After post-trial motions were denied, appellant was sentenced to serve a maximum term of imprisonment of three years. No expressed minimum sentence was imposed in compliance with the Act of July 16, 1968, P.L. 349, § 1, 61 P.S. § 566, which directed that sentencing courts should not set minimum sentences for women who were being committed to the State Correctional Institution at Muncy. Upon appeal, the Superior Court vacated the judgment of sentence and remanded for reconsideration of sentence. *Commonwealth v. Henderson*, 234 Pa.Super. 525, 341 A.2d 195 (1975). The basis for the Superior Court's order was the trial court's erroneous belief that the maximum sentence was five years whereas the maximum sentence was, in fact, three years. The Superior Court concluded that this mistaken belief might have influenced the sentence actually imposed.[1]

Upon resentencing, the trial court imposed a sentence of six months to three years. Appellant again appealed to the Superior Court, this time contending that the second sen-

---

1. The trial court erred in considering the maximum sentence for the crime of involuntary manslaughter provided by the new Crimes Code (Act of Dec. 6, 1972, P.L. 1482 No. 334, § 1, eff. June 6, 1973, 18 C.P.S.A. § 101 et seq.) when the crime had occurred prior to the effective date of the new act. Although the sentence imposed did not exceed the three year maximum, the Superior Court decided that appellant had been prejudiced by the misapprehension because of the judge's statement, at the time of the sentencing, that she intended to impose less than the maximum term of imprisonment. *Commonwealth v. Henderson*, 234 Pa.Super. 525, 341 A.2d 195 (1975).

tence represented an enhanced penalty. The Superior Court affirmed the trial court without an opinion and we granted appellant's request for review.

In the interim between the imposition of the original sentence and the resentencing, this Court handed down its decision in *Commonwealth v. Butler,* 458 Pa. 289, 328 A.2d 851 (1974). In *Butler,* we held that section 1 of the Act of July 16, 1968, *supra* insofar as it required trial courts not to fix minimum sentences when sentencing women, was unconstitutional. Thus any sentence of a woman to the State Correctional Institution at Muncy after the date of our decision in *Butler* would properly contain a minimum as well as a maximum sentence.

Appellant argues before us that the imposition of a minimum sentence not previously imposed is an increase in the punishment violative of the double jeopardy protection or the due process provision. The Commonwealth responds by charging the issue as framed in the appeal before this Court is broader than the grounds relied upon in the Petition for Allowance of Appeal we granted. Specifically, it is contended that appellant had restricted her request for review to a determination of a possible double jeopardy violation and therefore we should not consider the present assertion of a due process violation.

We agree with the general proposition that orderly and efficient appellate review is best served by confining the issues considered to "only the questions set forth in the petition, or fairly comprised therein, . . ." Pa.R.App. Proc. 1115(a)(3). To proceed otherwise would result in precluding the opposing party an opportunity of setting forth their reasons why the additional arguments should not have been considered on appeal. Furthermore, such a practice would invite the introduction of issues and theories not presented to the courts below. *See Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975); *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). We also agree that double jeopardy and due process questions present traditionally

distinguishable areas of constitutional concern directed at eradicating different evils. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).[2] It would therefore be tantamount to ignoring the purposes of Rule 1115(a)(3) to rationalize that an argument framed entirely in terms of double jeopardy was at the same time raising the issue of due process concerns. In appellant's petition for review the issue was framed solely on the grounds of double jeopardy.[3] We are satisfied that the position urged by the Commonwealth has merit and we will limit our consideration to the asserted double jeopardy violation.[4]

The first issue to be considered is whether the fixing of a minimum sentence is an enhancement of the sentence originally imposed. Under the law at the time of the entry of the original sentence, the imposition of a sentence without a minimum term being fixed for a female committed to Muncy, had the effect of making her eligible for parole immediately upon incarceration. Act of August 6, 1941, P.L.

2. In commenting upon the distinction in the two concepts, the United States Supreme Court has observed:

"In applying a provision like that of double jeopardy, which is rooted in history and is not an evolving concept like that of due process, a long course of adjudication in this Court carries impressive authority." *Gore v. United States,* 357 U.S. 386, 392, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958).

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Court refused to find a violation of the double jeopardy violation where a more severe sentence was unimposed upon reconviction following an accused's successful appeal. Id. Moreover, after explaining in detail why double jeopardy would not present a bar to such a practice the Court proceeded to explain why due process might require relief in such situations. Id.

3. We also note that the two cases (*Commonwealth v. Brown,* 455 Pa. 274, 314 A.2d 506 (1974); *Commonwealth v. Ernest Colding,* 237 Pa.Super. 316, 352 A.2d 554 (1975)), cited and relied upon by appellant in her petitions, both referred to *North Carolina v. Pearce, supra,* and acknowledge the distinction between the two constitutional protections.

4. Appellant has made no effort to refute this argument or to explain why the grounds asserted in its petition to this Court should be construed to include a due process violation.

861, *as amended,* 61 P.S. §§ 331.21, 331.31. *See Commonwealth v. Butler, supra,* 458 Pa. at 295, 328 A.2d at 855; *Commonwealth v. Daniels,* 430 Pa. 642, 647 n.\*, 243 A.2d 400, 402 n.6 (1968). Thus the imposition of a six month minimum defers parole eligibility for a six month period. *Commonwealth v. Butler, supra.*[5]

The Commonwealth argues that since this Court has held that the legal sentence is the maximum sentence, *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780, 786 (1977); *Commonwealth v. Daniels, supra,* 430 Pa. at 647, 243 A.2d at 403; *Commonwealth ex rel. Carmelo v. Smith,* 347 Pa. 495, 496, 32 A.2d 913, 914 (1943); *Commonwealth v. Kalck,* 239 Pa. 533, 87 A. 61 (1913), an adjustment of the minimum sentence should be of no consequence for double jeopardy.[6]

**5.** "The significance of minimum sentences arises in connection with eligibility for parole. See generally Act of August 6, 1941, P.L. 861, §§ 1–34, as amended, 61 P.S. §§ 331.1—331.34 (Supp. 1974). Responsibility for determining when to release a person on parole is vested in the Board of Parole. 61 P.S. § 331.17 (Supp. 1974). No person, who has received a minimum sentence may be considered for parole prior to the expiration of that minimum sentence. Id. § 331.21 (1964). In other words, a minimum sentence serves to notify the Board when it may exercise its discretion to parole an individual. Cf. *Commonwealth ex rel. Hendrickson v. Pennsylvania State Board of Parole,* 409 Pa. 204, 207–08, 185 A.2d 581, 584 (1962), cert. denied, 374 U.S. 817, 83 S.Ct. 1713, 10 L.Ed.2d 1041 (1963). See also *Commonwealth v. Tinson,* 433 Pa. 328, 249 A.2d 549 (1969)." (footnote omitted). *Id.,* 458 Pa. at 294–95, 328 A.2d at 854–855.

Further, the Commonwealth argues the proposition that the absence of a minimum sentence renders the accused immediately eligible for parole consideration although correct in theory, was, in fact, not the practice. To the contrary, it is contended that parole consideration for women offenders committed without minimum sentences began long after six months from the date of commitment. While this may have been the practice it certainly should not have been continued after *Daniels, supra.*

**6.** "Although in Pennsylvania, indeterminate sentences are commonplace, Act of June 19, 1911, P.L. 1055, § 6 as amended, 19 P.S. § 1057 (1964), we have frequently stated that the legal sentence is the maximum sentence. *Commonwealth ex rel. Carmelo v. Smith,* 347 Pa. 495, 32 A.2d 913 (1943); *Commonwealth v. Campbell,* 196 Pa.Super. 380, 175 A.2d 324 (1961), cert. denied, 371 U.S. 901, 83 S.Ct. 203, 9 L.Ed.2d 164, reh. den., 371 U.S. 959, 83 S.Ct. 498, 9 L.Ed.2d 507; *Commonwealth ex rel. Monaghan v. Burke,* 169 Pa.Super. 256, 82 A.2d 337 (1951), cert. denied, 342 U.S. 898, 72

In *Sutley,* proceeding on the theory that the maximum sentence is the real or controlling sentence, we reasoned that a subsequent legislative alteration of a minimum sentence *might* not offend the rules of the inviolability of final judicial judgments. *Commonwealth v. Sutley, supra,* 474 Pa. at 268, 378 A.2d at 786. In contrast however, in *Butler,* this Court recognized that disparity in our law of sentencing in fixing minimum sentences depending upon the sex of the offender was sufficiently significant as to violate the equal rights amendment to the State Constitution. P.S.Const. art. I, § 28. Although theoretically the essence of the sentence is the length of the State's control over the offender and the setting in which that control is to be exercised is more of an administrative concern, it would be unrealistic to contend that the time of parole eligibility is not of sufficient moment to be embraced within the protection afforded by the double jeopardy guarantee.

"Parole may mean an opportunity to start anew in society, and may be a determinative step in a person's 'rehabilitative, adjustment and restoration to social and economic life.'" (cites omitted) *Commonwealth v. Butler, supra,* 458 Pa. at 297, 328 A.2d 856.

█ The appellee also cites the fact that appellant argued in her first appeal to the Superior Court, *supra,* that she had been prejudiced by the sentencing court's failure to impose a minimum. It is urged that she cannot now complain where she received that which she requested. This argument miss-

S.Ct. 233, 96 L.Ed. 673; *Commonwealth ex rel. Byers v. Burke,* 164 Pa.Super. 438, 65 A.2d 424 (1949); *Commonwealth ex rel. Webb v. Cain,* 158 Pa.Super. 222, 44 A.2d 606 (1945). The reason being that while the minimum sentence determines parole eligibility, *Commonwealth v. Butler,* 458 Pa. 289, 328 A.2d 851 (1974). *See generally,* Act of Aug. 6, 1941, P.L. 861, §§ 1–34, as amended, 61 P.S. §§ 331.1–331.34 (Supp.1974), the maximum sets forth the period of time that the state intends to exercise its control over the offender for his errant behavior. The judicial discretion is the determination of the period of control over the person of the offender in view of the nature of the crime, the background of the defendant and the other pertinent considerations for such a decision. *See Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976)." *Commonwealth v. Sutley, supra,* 474 Pa. at 268, 378 A.2d at 786.

368

es the mark because it ignores the fact that the court to which it was addressed failed to consider this objection.[7] There is nothing in the record of the resentencing which would suggest that she at that time waived an objection to the imposition of a minimum sentence. At the time of the reconsideration of sentence (August 17, 1975) our rules did not provide for a further review of sentences at the trial level.[8]

Having concluded that the imposition of a minimum sentence where the original sentence did not contain a minimum sentence is an enhancement of the punishment and that the appellant has properly preserved this issue for review, we must now determine whether either the federal or state constitutional double jeopardy provisions have been offended.

The double jeopardy protection afforded by the Fifth Amendment is threefold.[9] It protects against a second prosecution for the same offense after acquittal. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). It protects against a second prosecution for the same offenses after conviction. *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). And it protects against multiple punishment for the same offense. *United States v. Benz*, 282 U.S. 304, 307, 51 S.Ct. 113, 75 L.Ed. 354 (1931); *Ex parte Lange*, 85 U.S. 163, 18 Wall. 163, 21 L.Ed. 872 (1873). Thus the question presented is whether the enhancement of the penalty which occurred in this case offends the prohibi-

7. The Superior Court held that they were precluded from addressing the merits of the claim because the issue was not raised at the trial level. *See Commonwealth v. Henderson, supra.* A different question would be presented if the minimum sentence had been imposed at her insistence.

8. We note that under the amendment of Pa.R.Crim.P. 1405, effective Sept. 1, 1977, there is still no right for further review at the trial level for asserted errors in the sentence other than in cases where guilty pleas have been entered. See Pa.R.Crim.P. 321.

9. The double jeopardy protection of the Fifth Amendment has been made applicable to the State through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

tion against multiple punishment. In *North Carolina v. Pearce, supra,* the Court held that the double jeopardy protection does not bar the imposition of a more severe punishment after a second conviction had been originally set aside at the behest of the defendant. An analysis of the *Pearce* decision forces the conclusion that the result was dictated by that court's strong adherence to the principle announced in *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

> "Although the rationale . . . has been variously verbalized, it rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean. . . . , so far as the conviction itself goes, and that part of the sentence that has not yet been served, it is no more than a simple statement of fact to say that the slate has been wiped clean. The conviction has been set aside, and the unexpired portion of the original sentence will never be served. A new trial may result in an acquittal. But if it does result in a conviction, we cannot say that the constitutional guarantee against double jeopardy of its own weight restricts the imposition of an otherwise lawful single punishment for the offense in question. To hold to the contrary would be to cast doubt upon the whole validity of the basic principle enunciated in *U. S. v. Ball,* [163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300] and upon the unbroken line of decisions that have followed that principle for almost 75 years. We think those decisions are entirely sound, and we decline to depart from the concept they reflect." (footnotes omitted) *North Carolina v. Pearce, supra,* 395 U.S. at 720–21, 89 S.Ct. at 2078, 23 L.Ed.2d 667.

The only plausible difference between the procedural posture presented in *Pearce* and that in the instant appeal is that *Pearce* involved sentences imposed after retrials, whereas in this case the Superior Court vacated the sentence

only and ordered resentencing.[10] We can perceive no basis for concluding that this distinction should require a different conclusion as to the applicability of the double jeopardy clause. In both *Pearce* and the instant case, the review of the original judgment of sentence was at the behest of the defendants. While in this case the Superior Court did not deem it warranted disturbing the conviction, nevertheless in her appeal the appellant challenged the validity of the conviction.[11]

The United States Supreme Court's analysis in *Forman v. United States*, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960) is instructive. As has been previously stated the basis of the reasoning that excludes double jeopardy protection for increased sentences is the decision in *United States v. Ball, supra,* wherein the Supreme Court announced the principle that a person can be tried a second time for an offense when the prior conviction for that same offense has been set aside by his appeal. *See also Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In *Forman,* the defendant argued he was not subject to the *Ball* rule because he sought a judgment of acquittal and not a new trial. The *Forman* Court held that the defendant had opened up his case by appealing from the conviction and subjected himself to the power of the appellate court to direct the appropriate relief. Thus, in *Forman,* the United States Supreme Court refused to hold *Ball* inapplicable and we find that reasoning controlling in the present case.

Having concluded that the Federal Constitution's double jeopardy guarantee has not been violated by the resentencing in this case, we must consider appellant's complaint that

**10.** In addition to the appellant's attack upon the sentence she also argued in her appeal before the Superior Court that the evidence was insufficient to support a verdict of guilty. *Commonwealth v. Henderson, supra,* 234 Pa.Super. at 527, n. 3, 341 A.2d at 196 n. 3.

**11.** A corollary of the power to retry is the power, upon a second conviction, to impose whatever sentence may be legally authorized, whether or not it exceeds the sentence originally imposed. *North Carolina v. Pearce, supra. See* also *Stroud v. United States,* 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919).

art. I, § 10 has been offended. First, we note that historically art. I, § 10 [12] of our Constitution has been interpreted as applying only where a person was twice placed in jeopardy *for a crime punishable by death. Commonwealth ex rel. Papy v. Maroney*, 417 Pa. 368, 207 A.2d 814 (1965); *Commonwealth v. Baker*, 413 Pa. 105, 196 A.2d 382 (1964); *Commonwealth v. Simpson*, 310 Pa. 380, 165 A. 498 (1933).

"White on the Constitution of Penna., page 107, has this to say: 'The first observation to be made concerning the clause in question is that it applies only to capital cases. This was not the fact anciently, when punishment might take the form of mutilation of one's members, or their endangerment, as in trials by battle, for, in such cases, when placed on trial he was in jeopardy of his limbs without also being in jeopardy of his life. The cases in which the protection of the clause may be invoked are those in which, at the time the crime was committed, it was punishable by death. Thus, crimes which at common law were capital, but which under our statutes are not so punished, are not within the meaning of the provision. If at some future time the punishment for murder should be made life imprisonment in all cases, the clause in question would be of no service, except because of the possibility of a return to capital punishment.' For these latter statements there is the express authority of *McCreary v. Com.*, 29 Pa. 323, 326.

"Moreover, the language of the constitutional provision is clear and unambiguous. 'No person shall for the same offense be twice put in jeopardy of life or limb,' can only mean that no one shall be tried a second time for an offense the punishment of which may result in the taking of his life or injury to his limbs. Plainly, the language itself compels this conclusion; abnormality in its use is required before any other can be reached." *Commonwealth v. Simpson, supra*, 310 Pa. at 385–86, 165 A. at 499.

12. Art. I, § 10 provides in pertinent part:
" . . . No person shall, for the same offense, be twice put in jeopardy of life or limb . . . "

 Since in this appeal appellant has been found guilty of involuntary manslaughter, a non-capital case, it is indeed questionable whether art. I, § 10 is applicable. While *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) has made the Fifth Amendment double jeopardy protection applicable to the states, and that protection extends to non-capital as well as capital offenses, nevertheless it does not follow that art. I, § 10 must be reinterpreted to include non-capital offenses. More importantly, it certainly cannot be argued that *Benton* required Pennsylvania to reinterpret its double jeopardy protection to extend beyond the requirement of the Fifth Amendment.

In support of her argument that Pennsylvania does provide a broader protection which would prohibit the enhancement of sentence which occurred here, appellant relies upon our decision in *Commonwealth v. Silverman*, 442 Pa. 211, 275 A.2d 308 (1971). In our judgment, appellant's reliance is misplaced. In *Silverman*, we note at the outset that the Court was not considering the double jeopardy protection afforded under the State Constitution, but rather the court was anticipating the United States Supreme Court's response under the Fifth and Fourteenth Amendments.

Moreover, the circumstances under consideration in *Silverman* were materially different from the question we presently have before us. In that case after imposing sentence the trial court called the defendant before him the next day and increased the sentence. The resentencing was done sua sponte and not at the behest of the defendant. This distinction is critical. As the Court in *Silverman* recognized, where, "the defendant . . . [appeals] the original sentence [he] voluntarily assumes the risk of a new trial and all the attending repercussions." Id., 442 Pa. at 217, 275 A.2d at 312. Thus, the *Silverman* Court expressly recognized the vitality of the *Ball* principle.

Some of appellant's confusion can be traced to the Pennsylvania distinction between a modification of an "existing" sentence and the imposition of a new sentence upon retrial or vacation of the original sentence, *Commonwealth v.*

*Brown,* 455 Pa. 274, 314 A.2d 506 (1974); *Commonwealth v. Allen,* 443 Pa. 96, 277 A.2d 803 (1971); *Commonwealth v. Silverman, supra.* This distinction is merely another way of separating those cases where the *Ball* principle is applicable from those where it is not. The term "existing" sentence related to situations where the defendant has not sought review of his conviction. *See* e. g. *Commonwealth v. Brown, supra; Commonwealth v. Silverman, supra.* In these cases the double jeopardy guarantee is viable and the cases of this jurisdiction have held that double jeopardy is offended where the attempted amendment seeks to increase the punishment, even though the amendment is attempted within the term in which the sentence was imposed, *Commonwealth v. Silverman, supra.* So too, the cases of this jurisdiction have held that modification of "existing" sentences, where the change results in an augmentation of the punishment offends double jeopardy although the purpose is merely to correct an inadvertent judicial mistake, *Commonwealth v. Brown, supra.*[13]

In that category of cases, which our decisions have characterized as an increase over the original sentence following retrial secured at the defendant's behest, there has been a general recognition that the United States Supreme Court decision in *Pearce* is controlling and that double jeopardy does not bar a more severe sentence being imposed after the second trial, *Commonwealth v. Brown, supra; Commonwealth v. Allen, supra; Commonwealth v. Silverman, supra.*

13. In this area the United States Supreme Court has yet to give a definitive answer thus the State courts have been required to attempt to anticipate their decision. *See* e. g. *Commonwealth v. Silverman, supra* ; or to resort to their respective constitutional provisions for guidance. In some instances the courts have resorted to public policy as a basis for its conclusion, see e. g. *Commonwealth v. Jackson,* 218 Pa.Super. 357, 280 A.2d 422 (1971), where the Superior Court based its conclusion, that a trial judge could not correct an inadvertent imposition of an illegal condition on a sentence by increasing the prison term, upon public policy grounds.

Where the defendant has begun to serve an "existing" sentence the Supreme Court decision in *Ex parte Lange,* 85 U.S. 163 (18 Wall.) 21 L.Ed. 872 (1873) would appear to have construed such action as violative of double jeopardy. But see *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947).

In this area there has been absolutely no suggestion that the Pennsylvania Constitution provides a more comprehensive protection than that afforded by the Federal Constitution.

Order of the Superior Court affirmed.

O'BRIEN, and POMEROY, JJ., concurred in the result.

EAGEN, C. J., noted his dissent.

ROBERTS and MANDERINO, JJ., filed dissenting opinions.

ROBERTS, Justice, dissenting.

The opinion of Mr. Justice Nix concludes that "imposition of a minimum sentence where the original sentence did not contain a minimum sentence is an enhancement of the punishment and that appellant [Shirley Henderson] has properly preserved this issue for review." 482 Pa. at 365, 393 A.2d at 1149. But it declines to address appellant's contention that, under *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the trial court's "enhancement of punishment," without articulating its reasons, denied her due process. According to the opinion appellant did not use "due process" language in her petition seeking allowance of appeal and therefore, under Pa.R.App. Proc. 1115(a)(3), appellant has not properly preserved the claim for this Court's consideration. I dissent.

Pa.R.App.Proc. 1115(a)(3) provides:

*"Content of the Petition for Allowance of Appeal*

(a) General Rule. The Petition for allowance of appeal need not be set forth in numbered paragraphs in the manner of a pleading, and shall contain the following (which shall, insofar as practicable, be set forth in the order stated):

. . . . .

(3) The questions presented for review, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of questions presented will be deemed to include every subsidiary question

> fairly comprised therein. Only the questions set forth in the petition, or fairly comprised therein, will ordinarily be considered by the court in the event an appeal is allowed."

Thus, under Rule 1115(a)(3), we will "ordinarily" consider only the "statement of questions presented" and "every subsidiary question fairly comprised therein." Compare Pa. R.Crim.Proc. 1123(a) (absolute rule (unqualified by "ordinarily" language) that "only those issues raised and the grounds relied upon in the motions may be argued" in post-verdict court).

Appellant, in her petition for allowance of appeal, framed her statement of questions as follows:

> "Did not the Superior Court err in holding that increasing the minimum sentence imposed on a criminal defendant without increasing the maximum was not a violation of double jeopardy because an increase in the minimum sentence alone was not an increase in the 'legal sentence?' "

The opinion of Mr. Justice Nix apparently is of the view that appellant's allegation of a *Pearce* violation is not a "subsidiary question fairly comprised" within appellant's statement of questions presented. But the opinion ignores the express term "ordinarily" contained in Rule 1115(a)(3), and thus deletes it from the Rule. Under the opinion's present reading of Rule 1115, every time this Court grants a petition for allowance of appeal, it in effect, without notice to the parties, enters a limited grant of allocatur. This has never been our practice. In support of the opinion's new reading of Rule 1115, it asserts that a contrary "practice would invite the introduction of issues and theories not presented to the courts below." 482 Pa. at 364, 393 A.2d at 1149. But the opinion's new reading of Rule 1115 contributes nothing to our existing means of assuring the proper preservation of issues.

Most troubling, should appellant seek further appellate review of her federal constitutional claim, today's new reading of Rule 1115 invites unnecessary review by the Supreme

Court of the United States. Mr. Justice Harlan, speaking for a unanimous Supreme Court, has observed:

> "Novelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decision, seek vindication in state courts of their federal constitutional rights."

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457–58, 78 S.Ct. 1163, 1169, 2 L.Ed.2d 1488 (1958). I am unwilling to hold Shirley Henderson to the consequences of today's unanticipated reading of Rule 1115, especially where based upon our prior practice, she has every reason to believe this Court would entertain her federal constitutional claim.

This Court should reach the merits of appellant's due process claim.

MANDERINO, Justice, dissenting.

I dissent. The double jeopardy clause protects, among other things, multiple punishment for the same offense. The principles that prompted the United States Supreme Court to conclude that the double jeopardy protection does not prohibit imposition of a more severe sentence after *retrial* and conviction where the original conviction had been set aside at the request of the defendant, have no application to this case. Here there has been no *retrial*. Here, simply stated, appellant was given a more severe sentence following the Superior Court's remand for sentencing than she originally received. The reason behind the court's imposition of a more severe sentence is irrelevant: The fact remains that appellant was sentenced twice for an offense for which she was tried and convicted only once. Such multiple sentencing is prohibited by the double jeopardy clause of the Fifth Amendment to the United States Constitution.

Furthermore, the majority's conclusion that Pennsylvania's double jeopardy clause is applicable only in capital cases is based on previous decisions of this court which were wrong when decided and which are still wrong. Surely, Pennsylvania's constitution does not permit a citizen to be

convicted of robbery *after* that citizen has been tried and acquitted of the same charges.