## Commonwealth v. Blessing

*Jayne F. Duncan,* deputy district attorney, for the Commonwealth.

*Gerald J. Brinser,* for defendant.

DOWLING, *J.,* March 28, 1984—Several questions of more than usual interest are raised in defendant's motion in arrest of judgment because his criminal involvement spans both the "old" and the "new" drunk driving laws.

Mr. Blessing was first arrested on August 8, 1982, for driving under the influence of alcohol. He was accepted into the Accelerated Rehabilitation Disposition Program, and as part of that procedure, his

driver's license was suspended for 90 days, effective January 13, 1983. On February 21, 1983, he was arrested for driving while under suspension, and found guilty before District Justice Rathfon. On appeal to this court, he was again found guilty and sentenced to pay a fine of $1,000 and undergo imprisonment for 90 days.

The first issue presented is whether the law in effect at the time of the prior offense or that in effect at the time of the present offense governs the sentence. At the time of defendant's arrest for driving under the influence, the penalty for driving under suspension was a fine of $200 and no imprisonment and without any distinction being made as to why the license was originally suspended.[1] However, when he committed the offense of driving under suspension, the penalty had been raised to a mandatory fine of $1,000 and 90 days imprisonment[2] if the suspension resulted from drunk driving.

Defendant takes the position that the law has changed between the time of the commission of the crime and the time of sentencing, and thus he cannot be subject to a greater punishment than that provided for at the time of the commission of the crime, quoting Commonwealth v. Dessus, 214 Pa. Super. 347, 257 A.2d 867 (1969). While this is a correct statement of the law, it does not fit the facts. When the crime was committed for which defendant was sentenced, i.e. driving under suspension, the statute provided for the mandatory fine and imprisonment. Furthermore, the elements of the of-

---

1. Act of June 17, 1976, P.L. 162, No. 81; 75 Pa.C.S.A. §1543.

2. Act of June 17, 1976, as amended December 15, 1976, P.L. 1268 No. 289.

fense of driving under suspension are the same as they were prior to the amendment increasing the penalties, thus distinguishing Commonwealth v. Clipper, 303 Pa.Super. 385, 449 A.2d 741 (1982), where the court found that prior offenses of shop lifting were not identical with the crime of retail theft, and hence, would not use the prior convictions in the enhanced penalty provisions of the new law.

It is generally held that in order to authorize the infliction of a more severe penalty on a conviction for a second or a subsequent offense, it is not necessary that the first conviction or other prior conviction relied on should have occurred subsequent to the amendment of the statute, 24B C.J.S., §1960(5).

Although not characterized as such, the brunt of defendant's argument focuses toward an "ex post facto" consideration. The prohibition against the enactment of ex post facto laws in this country was first written into the Constitution of the United States and since that time has been incorporated into the organic law of every state. As far back as 1798, the Supreme Court of the United States in Calder v. Gull, 3 Dall. 386, undertook to define the meaning of an ex post facto law, and that case has remained as a leading authority on the question to the present time. Under that decision, ex post facto laws were grouped into four classes as follows: (1) every law that makes an act done before the passing of the law, and which was innocent when done, criminal; (2) every law that aggravates a crime, or makes it greater than it was *when committed;* (3) every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime, *when committed;* (4) every law that alters the

legal rules of evidence, and requires less or different testimony, than the law required *at the time of the commission of the offense, in order to convict.* (Emphasis added.) See Commonwealth v. Kalck, 239 Pa. 533 (1913). It is evident that in the factual situation before us, none of·the above criteria are met.

In People v. Hightower, 112 N.E. 2d 126 (Ill. 1953), defendant was sentenced to a term of not less than 25 and not more than 50 years for drug violation, the sentence being based on convictions occurring prior to the effective date of the Illinois Act. The court held:

We find no merit in defendant's contention that section 23 is inapplicable for the reason that the prior conviction occurred before the statute became effective. In People v. Hanke, 389 Ill. 602, at page 604, 60 N.E. 2d 395, at page 396, we stated: "A statute increasing the punishment for a subsequent offense is not an ex post facto law merely because the prior conviction occurred before the statute was enacted or became effective." In Cooley On Constitutional Limitations, 8th ed., p. 553, the rule is stated as follows: "Heavier penalties are often provided by law for a second or subsequent offense than for the first, and it has not been deemed objectionable that in providing for the heavier penalty, the prior conviction authorized to be taken into account may have taken place before the law was passed. In such cases it is the second or subsequent offense that is punished, not the first."

In Spahler v. Colman, 379 So.2d 717 (Fla. 1980), petitioner was denied bail because of previous convictions and in denying the petition for writ of habeas corpus, the court held:

"The test for whether or not application of the cited rule and statute to the petitioner is unconstitu-

tional because "ex post facto" in effect, depends on whether or not both felony offenses were committed prior to the effective date of the rule and statute. "The statute is not rendered ex post facto by providing enhanced punishments for a subsequent offense because of convictions occurring prior to the passage of the statute." Cross v. State, 96 Fla. 768, 119 So. 380, 385 (1928). The Cross court quoted 1 Bishop's Criminal Law §283 (9 Ed.), as the rationale for its decision: " . . . It has been repeatedly adjudged 'that the previous commission of crimes may be considered in determining the punishment to be imposed, and in the creation of certain kinds of statutory offenses, without rendering a statute an ex post facto law.' "

And in Commonwealth v. Warner, 87 D.&C. 91, 96, (1954), the court rather succinctly stated:

"We do not agree with the contention of defendant's counsel that the enhanced penalties, provided for by this amendment of June 19, 1953, apply only to cases involving prior convictions for offenses committed subsequent to the adoption of the amendment."

We also have a recent opinion from the Honorable Keith B. Quigley in Commonwealth v. Hernandez,[3] where the court in considering a similar situation, i.e. the provision of the "New Drunk Driving Law"[4] which provides for mandatory jail terms for subsequent offenses[5] stated:

"The defense suggest that it would be improper

---

3. Perry County Court of Common Pleas, 20 CD 1983, Slip Opinion, March 18, 1983.

4. In reality amendments to the Motor Vehicle Code of 1977 (Act of June 17, 1976 P.L. 162 as amended).

5. 75 P.S. §3731.

for the court to consider pre-January 14, 1983, offenses in applying the mandatory provisions of these amendments. Certainly, pre-amendment offenses will be considered by a sentencing court in imposing a sentence for a current violation. The right of a court in this regard is not disputed by the defense. In fact, the defense points out that such a consideration would be well within the court's discretionary power.

Defense suggests that the prohibition against ex post facto legislation and due process considerations makes the enhancement provision of this act unconstitutional. Those charged with driving under the influence offenses prior to January 14, 1983, were not faced with mandatory sentencing provisions. Nor were those persons in a position to know that a conviction then would be resurrected later in the event of another conviction and trigger a mandatory disposition. They certainly were aware that a second offense would be considered and that consideration was not likely to result in favorable consideration."

Judge Quigley concluded, as we do, that there is nothing impermissible about the enhancement provisions, even though in our case we are concerned with different offenses. We think that the logic and the authorities would certainly embrace this situation.

It is next contended that the special penalty for driving under suspension because of a previous conviction for drunk driving results in double jeopardy.

Double jeopardy limitations[6] are traditionally

---

6. Fifth Amendment of the U.S. Constitution, Article I, Section 10, Pennsylvania Constitution.

viewed as applicable to successive prosecutions for the "same offense". See e.g. U.S. v. Ewell, 383 U.S. 116 (1966). Defendant's rather ingenious argument is that double jeopardy applies where a normal $200 fine is converted into a 90-day jail term and a $1,000 fine, if the suspension was activated by driving under the influence. The defendant was removed from ARD and sentenced for driving under the influence. He then received an enhanced penalty for driving under suspension, which was bottomed on his driving under the influence in the first instance. Thus, it is argued, he in effect received a second sentence.

It is true that double jeopardy protects against multiple punishments for the same offense. Commonwealth v. Henderson, 482 Pa. 359, 393 A.2d 1145 (1978). However, the courts have not been inclined to find that either the federal or state constitutional double jeopardy provisions have been offended where there has been an enhancement of the punishment. Thus, in Henderson, supra, while the court concluded that the imposition of a minimum sentence where the original sentence did not contain a minimum was an enhancement, it refused to find that such violated double jeopardy. In Commonwealth v. Gooslin, 280 Pa. Super. 384 , 421 A.2d 775 (1980), defendant was charged with escape after failing to return from the work release program in which he was participating while incarcerated for driving under the influence. Prior to the trial on the escape charge, his request for parole was denied based upon his violation of the conditions of the work release program. The lower court had dismissed the escape charges on the determination that prosecution under the same set of circumstances which had earlier caused the court to deny the petition for parole, fell within the protection of

the double jeopardy. In reviewing, the Superior Court found that the instant prosecution, i.e. the one for escape, was not as defendant maintained a second, but rather the initial prosecution. Thus, in this case the prosecution for driving under suspension is the initial prosecution and is not a prosecution for driving under the influence as was the first charge.

No cases have been brought to our attention which extend the double jeopardy appeal to cover a situation comparable to the one before us, nor are we inclined to make such an extension, particularly in view of the legislature's very clear mandate that the penalties for drunk driving be increased in an effort to combat what Justice Larsen in Commonwealth v. Mikulan, _____ Pa. _____ , 470 A.2d 1339, (1983), characterized as an epidemic after observing that:

"In Pennsylvania the grim alcohol-related traffic accident statistics for 1982 are: 800 persons killed in 684 traffic accidents; 19,499 people seriously injured in 12,508 accidents; and 20,155 vehicles damaged in accidents wherein at least one vehicle was damaged badly enough to require towing.

The remaining reasons are comparatively insignificant. It is asserted that the mandatory fine of $1,000 is excessive and that the required 90-day jail term constitutes cruel and unusual punishment. The argument as to the former is made by comparing it with the *minimum* fine of $300 for driving under the influence, ignoring that the *maximum* fine for this offense is $5,000. The contention as to the prison term is on the theory that the greater menace lies in driving under the influence rather than driving under suspension, and yet, the former doesn't face a minimum of 90 days in prison until his third

offense. Defendant forgets that this is a two-stage process. He must first be found guilty of drunk driving which carries with it the suspension of license privileges. To deter persons from violating this portion of the sentence, the legislature decreed that if it is done the defendant must be sentenced to 90 days in prison. In a reasonable and rational effort to put teeth into the penalties for drunk driving, the legislature has tied in a subsequent violation of the initial drunk driving penalty with a mandatory prison term. This is no more cruel and unusual than the thousands of deaths and injuries with their attending emotional heartbreak and financial ruin caused by persons driving on the highways under the influence of alcohol.

The last point is that the imposition of a minimum of 90 days in prison for a summary offense violates the Pennsylvania Crimes Code which provides that the maximum sentence for a summary offense shall be 90 days (18 P.S. §1105).

Defendant has apparently overlooked §6502 of the Vehicle Code which specifically provides that:

Title 18 (relating to crimes and offenses), in so far as it relates to fines and imprisonment for convictions of summary offenses, is not applicable to this title.

We cannot overlook, however, the need for and the effectiveness of a strong deterrent for those who would drive while under the influence. In a recent article in the Evening News, it is related that according to the coroner of Cumberland County, the number of alcohol-related traffic deaths has dropped significantly. It was likewise reported in the Patriot that Dauphin County has experienced a dramatic decrease in fatal traffic accidents with only a small percentage of them being alcohol-related.

Just as years ago with an *enforced* death penalty, the number of murders was at a premium whereas now it is at an all-time high; so traffic deaths likewise reflect the use of the carrot or the stick.

The touch-tone of the criminal law, with its attending sanctions, is throughout the world founded on deterrence:

The law hath not been dead,
Though it has slept.
Those many had not dared to do that evil,
If that the first, that did the edict infringe,
Had answered for his deed,
Measure For Measure, Act II, Scene 2.
Accordingly, we enter the following

## ORDER

And now, March 28, 1984, defendant's motion in arrest of judgment is dismissed.